**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
Vincent C. Granberry, Esq., SBN 276483
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:   (310) 893-6200
Facsimile:   (310) 988-2930
Email:       deborah@prosperlaw.com

Attorneys for Plaintiff,
Daniel Tarver

FILED
2012 JAN -9 PM 3:06
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TARVER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., AS ACQUIRER OF CERTAIN ASSETS AND LIABILITIES OF WASHINGTON MUTUAL BANK FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER; BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK N.A. AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR12; and Does 1 – 10, inclusive,<br><br>Defendants. | **Case No. CV11-08775-JHN (FMOx)**<br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]**<br>2. **QUASI CONTRACT**<br>3. **VIOLATION OF 15 U.S.C. § 1692e**<br>4. **VIOLATION OF 12 U.S.C. § 2605**<br>5. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.**<br>6. **ACCOUNTING**<br>7. **BREACH OF CONTRACT**<br>8. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

1

## TABLE OF CONTENTS

2    I.     STATEMENT OF THE CASE......................................................3

3    II.    JURISDICTION, VENUE, AND PARTIES......................................4

4    III.   FACTUAL ALLEGATIONS....................................................8

5    IV.   FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE STATUS OF

6            DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202].....................16

7    V.    SECOND CAUSE OF ACTION – QUASI CONTRACT.......................18

8    VI.   THIRD CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e............19

9    VII.   FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605............22

10   VIII. FIFTH CAUSE OF ACTION – BUS. AND PROF. CODE SECTION 17200, ET SEQ...........24

11   IX.   SIXTH CAUSE OF ACTION – ACCOUNTING....................................28

12    X.    SEVENTH CAUSE OF ACTION – BREACH OF CONTRACT....................29

13   XI.   EIGHTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

14            AND FAIR DEALING.................................................30

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Daniel Tarver ("Plaintiff" or "Mr. Tarver"), by and through his counsel, for his Complaint against Defendants JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation as Receiver (in its capacity as originating lender and purported mortgage servicer) (as originating lender, hereinafter "**Washington Mutual**") (as purported mortgage servicer, hereinafter "**JPMorgan**"); and Bank of America, N.A. as Successor by Merger to LaSalle Bank, N.A. as Trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR12 Trust (in its capacity as purported assignee of Plaintiff's Deed of Trust) (hereinafter "**Bank of America**"), (collectively "Defendants"), pleads as follows:

## I.   STATEMENT OF THE CASE

1.     On August 24, 2006, Plaintiff executed a promissory note ("Note") in favor of Washington Mutual, in the amount of $1,500,000 secured by a deed of trust ("Deed of Trust" or "Mortgage") for the refinance of real property located at 3210 Coldwater Canyon Ave., Los Angeles, California 91604.  Subsequently, Defendants failed to properly assign or transfer Plaintiff's Note to LaSalle resulting in Defendants' inability to collect on the Note and enforce the Deed of Trust.  Despite Defendants' failure to perfect a security interest, LaSalle and its agents have attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so.  In addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the Los Angeles County Recorder's Office.  Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of California Penal Code section 532(f)(a)(4).[1]  Through this action, Plaintiff seeks damages resulting from Defendants'

---

[1] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction

1    unlawful conduct and a declaratory judgment establishing that Defendants have failed to

2    substantiate a perfected security interest in the Note and Deed of Trust (collectively

3    referred to as "Loan").  Simply put, Defendants have no legal, equitable, or pecuniary

4    interest in the Note and Deed of Trust.

5         2.    In the alternative, if the Court finds that any of the Defendants have an

6    enforceable security interest in either the Note or Deed of Trust, Plaintiff maintains that

7    Defendants have breached Section 2 of the Deed of Trust and the Implied Covenant of

8    Good Faith and Fair Dealing, by charging improper fees and miscalculating and

9    misapplying payments to offset both principal and interest, in addition to the statutory

10   provisions listed above.

11   **II.    JURISDICTION, VENUE, AND PARTIES**

12        3.    This Court has original jurisdiction over the claims in this action based on

13   28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692e, and 42 U.S.C. § 1983 which

14   confer original jurisdiction on federal district courts in suits to address the deprivation of

15   rights secured by federal law.

16        4.    This Court also has supplemental jurisdiction over the pendant state law

17   claims because they arise from the same nucleus of operative facts under Article III of

18   the United States Constitution, pursuant to 28 U.S.C. § 1367.

19        5.    This Court also has original jurisdiction over the claims in this action based

20   on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits

21   between diverse citizens that involve an amount in controversy in excess of $75,000.00.

22        6.    The unlawful conduct, illegal practices, and acts complained of and alleged

23   in this Complaint were all committed in the Central District of California and involved

24   real property that is located in the Central District of California.  Therefore, venue

25   properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

26

27

28   with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

FIRST AMENDED COMPLAINT                                                    -4-

1        7.    Plaintiff is now, and at all times mentioned herein, an individual residing in

2   the County of Los Angeles, in the State of California.  At all times relevant to this

3   action, Plaintiff has owned real property commonly known as 3210 Coldwater Canyon

4   Ave., Los Angeles, California 91604 (the "Property").  Further described as Assessor's

5   Parcel Number 2388-021-008, with the following legal description:

6

7       THAT PORTION OF LOT 1111 OF TRACT NO. 1000, IN

8       THE CITY OF LOS ANGELES, COUNTY OF LOS
        ANGELES, STATE OF CALIFORNIA AS PER MAP

9       RECORDED IN BOOK 19 PAGE (S) 1 TO 34 INCLUSIVE
        OF MAPS, IN THE OFFICE OF THE COUNTY

10      RECORDER OF SAID COUNTY, DESCRIBED AS
        FOLLOWS:

11

12      BEGINNING AT A POINT IN THE WESTERLY LINE OF
        THE CERTAIN EASEMENT DESCRIBED IN DEED TO

13      THE CITY OF LOS ANGELES, RECORDING IN BOOK

14      12315 PAGES 35 OFFICIAL RECORDS OF SAID
        COUNTY, (DISTANT THEREON SOUTH 08° 15' EAST

15      8.41 FEET FROM THE NORTHERLY TERMINUS OF

16      THAT CERTAIN COURSE RECITED IN SAID DEED AS
        HAVING A BEARING OF SOUTH 08° 15' EAST AND A

17      LENGTH OF 157.60 FEET, THENCE NORTH 61° 31' 53"

18      WEST 200 FEET TO THE TRUE POINT OF BEGINNING;

19      THENCE CONTINUING NORTH 61° 31' 53" WEST 92.81

20      FEET, THENCE SOUTH 74° 45' 42" WEST 15 FEET TO A
        POINT IN THE EASTERLY LINE OF THAT PORTION OF

21      SAID LOT, DESCRIBED IN DEED TO WARREN FL

22      LEONARD AND RHEA M LEONDARD, RECORDED IN
        BOOK 14225 PAGE 274 OFFICIAL RECORDS OF SAID

23      COUNTY, DISTANT THEREON NORTH 15° 14' 18"

24      WEST 53.12 FEET, FROM THE SOUTHERLY TERMINUS
        OF THAT CERTAIN COURSE RECITED IN SAID DEED

25      AS HAVING A BEARING OF SOUTH 15° 52' 54" EAST

26      AND A LENGTH OF 97.61 FEET; THENCE ALONG SAID
        EASTERLY LINE THE FOLLOWING COURSES

27

28      NORTH 15° 14' 18" WEST 44.49 FEET, THENCE
        NORTHWESTERLY 57.61 FEET (THROUGH AN ARC OF

22° 15' 45") ALONG A TANGENT CURVE CONCAVE TO THE SOUTHWEST HAVING A RADIUS OF 148.27 FEET, THENCE NORTHWESTERLY 46.19 FEET (THROUGH AN ARC OF 32° 18' 05") ALONG A REVERSE CURSE CONCAVE TO THE NORTHEAST HAVING A RADIUS OF 81.93 FEET TO THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN SAID DEED), THENCE NORTH 84° 48' 02" EAST 15 FEET;

THENCE NORTH 71° 48' 37" EAST 195.84 FEET TO A POINT IN THE WESTERLY LINE OF COLDWATER CANYON ROAD, AS SHOWN ON MAP OF TRACT NO. 5655 RECORDED IN BOOK 110 PAGES 69 TO 71 INCLUSIVE OF SAID MAP RECORDS, DISTANT THEREON NORTH 06° 43' 58" WEST 52.85 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE, HAVING A RADIUS OF 120 FEET, AN ANGLE OF 350 55' AND A LENGTH OF 75.22 FEET, THENCE ALONG SAID WESTERLY LINE SOUTH 06° 43' 58" EAST 25 FEET; THENCE SOUTH 14° 09' 11" WEST 221.42 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARDON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED OR GRANTED IN DOCUMENTS OF RECORD.

8.    At all relevant times, **JPMorgan Chase Bank, N.A.,** as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation as Receiver is a national association organized under the laws of the United States with its main office in New York.

9.    At all relevant times, **Bank of America, N.A.** successor by merger to LaSalle, N.A. as Trustee for WAMU Mortgage Pass-through Certificates Series 2006-AR12 Trust, is a national banking association with its main office in North Carolina.

10.    Plaintiff is ignorant of the true identity and capacity of Defendants designated as Does 1 - 10, but will amend the Complaint when their identities have been

1   ascertained according to proof within the time permitted.  However, Plaintiff alleges on

2   information and belief, that each and every Doe Defendant is in some manner

3   responsible for the acts and conduct of the other Defendants, and were, and are,

4   responsible for the injuries, damages, and harm incurred by Plaintiff.  Plaintiff further

5   alleges on information and belief that each such designated Defendant acted, and acts, as

6   the authorized agent, representative, and associate of the other Defendants in doing the

7   things alleged herein.

8          11.    Whenever reference is made in this Complaint to any act of any

9   Defendant(s), that allegation shall mean that each Defendant acted individually and

10  jointly with the other Defendants.

11         12.    Any allegation about acts of any corporate or other business Defendant(s)

12  means that the corporation or other business did the acts alleged through its officers,

13  directors, employees, agents and/or representatives while they were acting within the

14  actual or ostensible scope of their authority.

15         13.    At all relevant times, each Defendant committed the acts, caused or

16  directed others to commit the acts, or permitted others to commit the acts alleged in this

17  Complaint.  Additionally, some or all of the Defendants acted as the agent of the other

18  Defendants, and all of the Defendants acted within the scope of their agency if acting as

19  an agent of the other.

20         14.    At all relevant times, each Defendant knew or realized that the other

21  Defendants were engaging in or planned to engage in the violations of law alleged in

22  this Complaint.  Knowing or realizing that the other Defendants were engaging in or

23  planning to engage in unlawful conduct, each Defendant nevertheless facilitated the

24  commission of those unlawful acts.  Each Defendant intended to and did encourage,

25  facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted

26  the other Defendants in the unlawful conduct.

27  ///

28  ///

III.   **FACTUAL ALLEGATIONS**

15.   On or about August 24, 2006, Daniel Tarver executed a Note and Deed of Trust (hereinafter "Mortgage" or "Deed of Trust") in favor of Washington Mutual, refinancing the Property.

16.   On information and belief, Plaintiff alleges that shortly after the origination of his Loan, Washington Mutual attempted to sell his Loan to another entity or entities. Those entities are currently unknown but will be identified through discovery.

17.   Plaintiff's initial investigation has confirmed that there was an **attempt** to securitize the Mortgage by signing and transferring the Mortgage into the WAMU Mortgage Pass-through Certificates Series 2006-AR12 Trust ("WAMU Trust"). *See* **Exhibit "A",** attached hereto is a securitization flow chart depicting the securitization process. In order for Plaintiff's Mortgage to be a part of the WAMU Trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that governed the creation of the Trust. The Trust Agreement sets forth how the trust acquires its assets and the powers and limits of the Trust. The PSA and the Mortgage Loan Purchase Agreement when read together require that each party to the sale of the mortgage loans endorse each promissory note to the next party evidencing a complete chain of endorsements from the originator to the endorser last endorsing the Mortgage Note. In order to comply with the PSA, the chain of endorsements would have had to be complete on or before the closing date of the Trust.

18.   The WAMU Trust is regulated by Delaware Law, specifically Section 10.05 of the PSA entitled "Governing Law". Section 10.05 is an election by the parties to the WAMU Trust that the Trust will be governed under the laws of the State of Delaware. See **Exhibit "B",** attached hereto is a true and correct copy of Section 10.05 of the PSA.

19.   Congress has recognized the importance of the trust's strict compliance with the PSA and state law. Specifically, the Congressional Oversight Panel, in its November 16, 2010, Oversight Report Examining the Consequences of Mortgage

1  Irregularities for Financial Stability and Foreclosure Mitigation determined, "…[I]f the

2  transfer for the notes and mortgages did not comply with the PSA, the transfer would be

3  void, and the assets would not have been transferred to the trust." See **Exhibit "C",**

4  attached hereto is a true and correct copy of the Congressional Oversight Panel's

5  November 16, 2010 Oversight Report Examining the Consequences of Mortgage

6  Irregularities for Financial Stability and Foreclosure Mitigation.  Plaintiff alleges his

7  Note was not securitized properly and in accordance with the PSA and state law.  As a

8  result, the WAMU Trust has no legal, equitable, or monetary interest in his Note such

9  that it can demand payment from him.

10        20.      Plaintiff alleges the entities involved in the attempted securitization of

11  Plaintiff's Loan failed to adhere to the requirements of the Trust Agreement necessary to

12  properly assign the mortgage loan into the Trust.  As a result, Plaintiff's Loan was not

13  assigned to the WAMU Trust and is therefore not part of the Trust res.  This fatal defect

14  renders Defendants third-party strangers to the underlying debt obligation without the

15  power or right to demand payment, declare default, negotiate his Loan, and foreclose on

16  his Property.  Although Defendants are aware of this fact, they have and continue to act

17  as if they have authority to demand payment, declare default, negotiate his Loan, and

18  foreclose on his Property.  Plaintiff specifically disputes these facts.

19        21.      On or around early 2009, Mr. Tarver experienced unforeseen financial

20  hardship stemming from his failed business.  He initiated loan modification negotiations

21  with JPMorgan, in an attempt to work out an affordable payment.  Plaintiff initiated loan

22  modification negotiation efforts with JPMorgan after his mortgage rate became

23  unaffordable.  Plaintiff was initially given a "token" loan modification.  Under the terms

24  of the loan modification Mr. Tarver agreed to pay the next ten years 5.023% interest

25  only payments of $6,369.79 per month and thereafter a monthly principal and interest

26  payment in the amount of $9,438.05 per month for the remaining term.  The terms of

27  this modification were not much better than Mr. Tarver's original monthly payments.

28

22. Plaintiff was unable to keep up with the payments under the loan modification agreement. As a result, Mr. Tarver was forced to file bankruptcy under Chapter 11 in order to save his home. He began making payments according to the plan for approximately seven months. The bankruptcy plan under Chapter 11 was not approved and converted into a Chapter 7. Plaintiff attempted to pay his plan payments to JPMorgan, but JPMorgan refused to accept the payments. As a result, Plaintiff was again compelled to initiate loan modification negotiations. Plaintiff resubmitted an update loan modification application package containing all of his pertinent personal and financial information for JPMorgan's review.

23. When Mr. Tarver did not hear back from JPMorgan after a few weeks he desperately contacted them daily trying to ascertain the status of his loan modification application and keep his home. Each time JPMorgan assured Mr. Tarver his application was under review. To date, Mr. Tarver's loan modification is under review with JPMorgan.

24. After years of negotiation, follow up phone calls, resubmitting documents many times over, and being forced into bankruptcy Mr. Tarver felt he had been treated unfairly and sought counsel to investigate why JPMorgan had chosen to push him into foreclosure. Plaintiff soon learned that none of the Defendants have any legal or corporate authority to collect on his Loan, service the Loan, or proceed with a lawful foreclosure.

25. Plaintiff's investigation has confirmed that there was an **attempt** to securitize the Mortgage by assigning and transferring the Mortgage into the WAMU Trust, but the mortgage loan was never actually assigned and transferred to the WAMU Trust.

26. In fact, Plaintiff alleges that the Mortgage was never assigned or transferred, to any of the parties involved in the securitization process. Specifically, Plaintiff alleges that his Note and Mortgage were never assigned to the Sponsor, Depositor, the WAMU Trust, or any of the Defendants as required by the PSA.

27.     Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) his counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, complaints by Attorneys General from various states, and publicly available securitization documents and practices; (4) a review of the purported "Assignment of Deed of Trust," executed by "Colleen Irby"; and (5) an audit of Bank of America's filings with the Securities and Exchange Commission ("SEC"), including Bank of America's 424B5 Prospectus and PSA.

28.     Plaintiff's information and belief is further based on a Securitization Audit of his Note and Mortgage that Mr. Tarver commissioned in order to help determine (1) the owner of his Loan, and (2) the secured/unsecured status of his Note and Mortgage.

29.     Based on the findings of the Audit, Plaintiff believes and alleges thereon that his Note was supposed to be properly securitized as a mortgage-backed security that is, "pooled" together in a trust pool.  The trust is regulated by Delaware Trust Law.  Plaintiff alleges that his Note was *not* securitized and that the WAMU Trust has no legal, equitable, or monetary interest in his Promissory Note such that it can demand payment from him.  Further, after conducting the Securitization Audit of Mr. Tarver's chain of title and Bank of America's PSA, it was determined that Mr. Tarver's Note and Mortgage were not properly conveyed into the Trust (if it was ever properly formed) because (1) the beneficial interest in Plaintiff's Note and Mortgage were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiff's Note and Mortgage to the Trust) prior to the Closing Date of the Trust and, (2) Bank of America failed to perfect the title to Mr. Tarver's Note and Mortgage by not *strictly* following the requirements of the PSA and other laws, regulations, and agreements that govern the administration of the Trust.  As the purported Trustee of the Trust, Bank of America cannot take action which is not authorized by the agreements that created and govern the Trust.  Bank of America's attempt to acquire an interest in

1    Plaintiff's Loan after the Closing Date indicated in the PSA, is an ultra vires act that is

2    violation of the PSA.

3         30.    Plaintiff alleges that the Mortgage was not properly assigned to the WAMU

4    Trust on or before September 27, 2006 the required "Closing Date," as set forth in the

5    Trust Agreement.  The "Closing Date" is the date by which all of the notes and

6    mortgages must be transferred into the WAMU Trust in order for the mortgage loan to

7    be a part of the trust res.  As such, Mr. Tarver's Loan was never, and has never been,

8    part of the WAMU Trust res.  *See* **Exhibit "D"**, attached hereto is a true and correct

9    copy of section 1.01 and 2.04 of the Trust Agreement containing these important

10   requirements.  As such, Mr. Tarver's Loan was never, and has never been, part of the

11   WAMU Trust res.

12        31.    Sections 1.01 and 2.04 of the PSA outline how mortgage loans are to be

13   conveyed into the securitized mortgage trust.  Specifically, in connection with any

14   assignment, Section 1.01 requires:

15

16        "...[The original Mortgage Note endorsed (A) in blank, without recourse,
          (B) to the Trustee, without recourse, or (C) to the Trust, without recourse,
17        and all intervening endorsements evidencing a complete chain of
          endorsements from the originator to the endorser last endorsing the
18        Mortgage Note..."

19

20   Section 2.04 continues;

21        "The Company does hereby irrevocably sell, transfer, assign, set over and
          otherwise convey to the Trust, without recourse, all the Company's right,
22        title and interest in and to the Mortgage Pool Assets. The Trust, as
          payment of the purchase price of the Mortgage Pool Assets and in
23        consideration of the Company making the Initial Group 1 Servicing Fee
          Shortfall Deposit, the Initial Group 2 Servicing Fee Shortfall Deposit and
24        the Initial Interest Shortfall Deposit pursuant to Section 2.01, shall, on the
25        Closing Date, issue the REMIC I Regular Interests and the Class R-1
          Residual Interest to the Company. The REMIC I Regular Interests and
26        the Class R-1 Residual Interest shall together be a separate series of
27        beneficial interests in the assets of the Trust consisting of the Mortgage
          Pool Assets pursuant to Section 3806(b)(2) of the Statutory Trust
28

FIRST AMENDED COMPLAINT                                                            -12-

Statute… The Company shall file such financing statements, and the
Company, the Servicer and the Trustee acting on behalf of the Trust at
the direction of the Company shall, to the extent consistent with this
Agreement, take such other actions as may be necessary to ensure that, if
this Agreement were found to create a security interest in the Mortgage
Pool Assets, such security interest would be a perfected security interest
of first priority under applicable law and will be maintained as such
throughout the term of the Agreement. In connection herewith, the Trust
shall have all of the rights and remedies of a secured party under the
Uniform Commercial Code as in force in the relevant jurisdiction." *See*
**Exhibit "D".**

32.     In further violation of Sections 1.01 and 2.04 of the Trust agreement,
Defendants failed to deposit specific documents, such as all endorsed promissory notes,
the original recorded mortgage, and an assignment to the Trustee with the Custodian of
Records of the WAMU Trust.  These documents were required to be deposited in order
to complete the assignment and transfer of Plaintiff's Note and Mortgage to the Trust.

33.     Despite this failure to assign, transfer, and grant Plaintiff's Mortgage to
Bank of America, Defendants have made numerous attempts to collect on Plaintiff's
mortgage and have now resorted to cover-up this fatal defect by executing and recording
a fabricated Assignment of Deed of Trust ("Assignment").

34.     The Assignment was recorded on July 1, 2011 by Colleen Irby, as a
purported "Officer" for Mortgage Electronic Registration Systems, Inc. ("MERS").
This Assignment alleges that for "value received" MERS granted, assigned, and
transferred to Bank of America, all beneficial interest in the Deed of Trust, together with
"the money due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust/Mortgage."  Plaintiff alleges that no such transfer ever
occurred, and that "Colleen Irby" lacked the corporate authority to sign on behalf of
MERS.  Plaintiff alleges that Colleen Irby was never an employee of MERS but instead
an employee of California Reconveyance Company.  LinkedIn is a social networking
website geared towards companies and industry professionals looking to make new
business contacts or keep in touch with previous co-workers, affiliates, and clients.
Within LinkedIn, Members can create customizable profiles that detail employment

1   history, business accomplishments, and other professional accolades.[2]  *See* **Exhibit "E,"**

2   attached hereto is a true and correct copy of Colleen Irby's LinkedIn profile.  Plaintiff

3   alleges Defendant Bank of America and/or JPMorgan instructed either Colleen Irby, or

4   another agent who forged Colleen Irby's signature, to execute the Assignment in order

5   to mislead Plaintiff into believing Bank of America was assigned the interest in his Note

6   and Mortgage.  Defendant Bank of America and/or JPMorgan acted with the intent to

7   illegally collect Plaintiff's payments with the knowledge that the Assignment would not

8   in fact legally grant, assign, or transfer Plaintiff's interest to Bank of America.

9        35.    On or around October 24, 2011, after the initial investigation, Plaintiff sent

10   a Qualified Written Request to JPMorgan in order to verify and validate his debt,

11   pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) in which he

12   requested documentation demonstrating who actually owned his Note.  Plaintiff's QWR

13   requested that the servicer provide, among other things, the name, address, name of a

14   contact person and telephone number of the owner of his mortgage Note.  *See* **Exhibit**

15   **"F,"** attached hereto is a true and correct copy of Plaintiff's Qualified Written Request.

16   The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank

17   Act")[3] requires that the servicer provide an acknowledgement of receipt of the QWR

18   within five days of receipt and to substantively respond within thirty business days of

19   receipt.  In violation of the Dodd-Frank Act, JPMorgan did substantively respond to

20   Plaintiff's QWR, rather JPMorgan merely provided several copies of Mr. Tarver's

---

[2] http://www.hudsonhorizons.com/Our-Company/Internet-Glossary/LinkedIn.htm

[3] The Dodd-Frank Act was signed into law on July 21, 2010.  The Act amended several statutes including 12 U.S.C. § 2605.  The Act amended 12 U.S.C. § 2605 by shortening the deadline to acknowledge a QWR from fifteen days to only five days and shortening the substantive response deadline from sixty days to thirty days.  There is a fifteen day extension allowed if the borrower is notified of the extension and the reasons for the delay.  In addition, the Dodd-Frank Act requires a servicer of a federally related mortgage to "respond to a QWR within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." H.R. 4173 section 1463(a).  The Dodd-Frank Act provides available damages to an individual for failing to respond to a QWR request.  Available damages were increased from actual damages plus $1,000 to actual damages plus $2000.  The Dodd-Frank Act also prohibits various servicing practices and made a few changes to TILA.

1  Residential Loan Application.  *See* **Exhibit "G,"** attached hereto is a true and correct

2  copy of JPMorgan's response to Plaintiff's Qualified Written Request.

3        36.    Plaintiff does not dispute that he owes money on his mortgage obligation.

4  Rather, Plaintiff disputes the amount owed and seeks the Court's assistance in

5  identifying the true creditor and the amount they actually owe under the Note and Deed

6  of Trust.

7        37.    Plaintiff has been paying the wrong creditor and all payments made to the

8  WAMU Trust must be disgorged and refunded.

9        38.    Plaintiff has been damaged as his credit and credit score were severely

10  damaged.

11        39.    The title to Plaintiff's home has been slandered, clouded, and its salability

12  has been rendered unmarketable.

13        40.    Plaintiff must seek the Court's assistance to identify his true creditor as he

14  risks not obtaining clear title to this property should he be able to workout a payment

15  plan or forbearance.

16        41.    Plaintiff does not know who the current beneficiary of his Note and

17  Mortgage actually is, such that he is now subject to double financial jeopardy.

18        42.    Plaintiff has offered to and is ready, willing, and able to unconditionally

19  tender his obligation.[4]

20

21      [4] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not

22  actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal.
   July 16, 2009) ("…debtor must allege a credible tender of the amount of the secured debt…").

23  Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt
   because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic*

24  *Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16  (C.D.Cal June 24, 2011)
   (emphasis added) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148

25  Cal. App. 2d 558, 564 (1957). *See also Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-
   732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("…requiring plaintiff to tender the amount due on his

26  loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any
   rights under the loan."). *See also Vogan v. Wells Fargo Bank, N.A.*, No. CV 11-02098-JAM (KJN)

27  (C.D. Cal. November 16, 2011) The tender requirement does not apply because Plaintiffs are
   challenging the beneficial interest held by the assignees in deed of trust, "not the procedural sufficiency

28  of the foreclosure itself."  In light of the fact that Plaintiff contests the legitimacy of the Defendants'

43.   Not only is Plaintiff ready, willing, and able to tender his obligation, but he is also gainfully employed and has the ability to pay a reasonable payment to fulfill his obligation.

## FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]

### [Against All Defendants and Doe Defendants]

44.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

45.   Section 2201(a) of Title 28 of the United States Code states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

46.   Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.[5]

47.   Plaintiff alleges that Bank of America does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

---

claim to the mortgage payments, it would be ***illogical and inequitable*** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

[5] It is axiomatic that a cause of action for declaratory relief serves the purpose of adjudicating ***future*** rights and liabilities between parties. *See Cardellini v. Casey*, 181 Cal. App. 3d 389 (1986) [Emphasis added]; *Bachis v. State Farm Mutual Auto. Ins. Co.*, 265 Cal. App. 2d 722 (1968).

48.     On or around July 1, 2011, Defendants claimed they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiff's Note, Deed of Trust, and Property.  Plaintiff disputes this fact.

49.     Thus, the competing allegations made by Plaintiff and Defendants, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.[6]

50.     In addition, the harm by Defendants is ongoing and includes the imminent foreclosure of Plaintiff's home.  Therefore, as this claim relates to future harm, Plaintiff's declaratory relief claim is cognizable as an independent cause of action.[7]

51.     Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

52.     Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and negotiate with them; (2) he will be denied the right to conduct discovery and have Bank of America's and/or JPMorgan's claims verified by a custodian of records who has personal knowledge of the Loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount he still owes minus any illegal costs, fees, and charges.

---

[6] "Declaratory relief is only appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

[7] *See Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.").

53.     Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Bank of America's claims against Plaintiff are enforceable and whether they are secured or unsecured by any right, title, or interest in Plaintiff's Property.

54.     Furthermore, the conduct of Bank of America, JPMorgan, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

### SECOND CAUSE OF ACTION – QUASI CONTRACT
### [Against Bank of America, JPMorgan, and Doe Defendants]

55.     Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

56.     Bank of America attempted but failed to become a party to the Note and Deed of Trust when it was purportedly assigned Bank of America's interest in Plaintiff's Note and Deed of Trust.  Bank of America and/or JPMorgan demanded monthly mortgage payments from Plaintiff starting in August 24, 2006 and continued to collect payments from Plaintiff for nearly five and one half years.  Plaintiff reasonably relied upon Bank of America and/or JPMorgan's assertion that they were entitled to payments.

57.     Bank of America and/or JPMorgan knowingly accepted payments and retained them for their own use knowing that Bank of America and/or JPMorgan did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments.  It would be inequitable for Bank of America and/or JPMorgan to retain the payments it received from Plaintiff which they did not have legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is

1   designed to restore the aggrieved party to his or her former position by return of the

2   thing or its equivalent in money.

3       58.    Section 23 of the Deed of Trust states that: "Upon payment of all sums

4   secured by this Security Instrument, Lender shall request Trustee to reconvey the

5   Property and shall surrender this Security Instrument and all notes evidencing debt

6   secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property

7   without warranty to the person or persons legally entitled to it."

8       59.    The obligations to Bank of America under the Deed of Trust were fulfilled

9   when Bank of America received the balance on the Note as proceeds of the sale of

10  Plaintiff's Note and Mortgage to a presently unknown entity.  Bank of America and/or

11  JPMorgan have been unjustly enriched by collecting monthly payments from Plaintiff

12  when they have no interest his Note or Deed of Trust.

13      60.    Plaintiff seeks restitution for any payments they made to Bank of America

14  and JPMorgan that were not paid to the lender or beneficiary, if any.

15      **THIRD CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e**

16      **[Against Bank of America, JPMorgan, and Doe Defendants]**

17      61.    Plaintiff hereby incorporates by reference each and every one of the

18  preceding paragraphs as if the same were fully set forth herein.

19      62.    Defendant Bank of America, acting as the trustee of the WAMU Trust, is in

20  the business where the principal purpose is to collect debts on behalf of the investors in

21  the WAMU Trust.  Bank of America attempted to collect Plaintiff's debt obligation on

22  behalf of the WAMU Trust investors and thus is a debt collector pursuant to the Federal

23  Debt Collection Practices Act ("FDCPA").  "The term 'debt collector' means any

24  person who uses any instrumentality of interstate commerce or the mails in any business

25  the principal purpose of which is the collection of any debts, or who regularly collects or

26  attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

27  due another." 15 U.S.C. § 1692a(6).

28

63.    Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt… including the false representation of… the character, amount, or legal status of any debt… and the threat to take any action that cannot legally be taken…" 15 U.S.C. §1692e(2)(A),(5).

64.    Bank of America attempted to collect on the Note under false pretenses, namely that they were assigned Plaintiff's debt when in fact they were not.

65.    Bank of America, threatened to take action, namely engaging in collection activities that cannot legally be taken by them.

66.    As alleged herein, Plaintiff's Note was not properly transferred to Bank of America, who seeks to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

67.    On information and belief, Bank of America does not have a perfected security interest in Plaintiff's Note such that they can enforce Plaintiff's obligation and/or collect mortgage payments.

68.    Plaintiff alleges that Bank of America falsely represented the status of Plaintiff's debt and Bank of America's and its agents' ability to enforce Plaintiff's debt obligation, in which they have no pecuniary, equitable, or legal interest.

69.    The conduct described above by Bank of America, was malicious because Bank of America and its agents knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Bank of America and its agents continued to demand and collect Plaintiff's mortgage payments.

70.    On information and belief, Bank of America engaged and is engaging in a pattern and practice of defrauding Plaintiff, in that during the entire life of the mortgage Loan, Bank of America failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

71.    On information and belief, at all times material, Bank of America had, and have, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would

1    continue to make further payments based on Defendants' inaccurate account.  Plaintiff

2    made payments based on these improper, inaccurate, and fraudulent representations.

3          72.    The foregoing acts and omissions of Bank of America and their agents

4    constitute numerous and multiple violations of the FDCPA including, but not limited to,

5    each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et

6    seq., with respect to Plaintiff.

7          73.    Plaintiff could not have reasonably known of the existence of a claim for

8    violation of 15 U.S.C. § 1692e because Bank of America, and its agents fraudulently

9    concealed the fact that they were not entitled to enforce Plaintiff's debt obligation and

10   that they were falsely representing to Plaintiff that the character and amount of money

11   Plaintiff still owed on his debt.[8]

12         74.    As a result of Bank of America's violations of the FDCPA, Plaintiff is

13   entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an

14   amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys'

15   fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each and

16   every Defendant herein.

17         75.    Plaintiff relied on Bank of America's and/or its agents' misrepresentations

18   and have been damaged in the following ways: (1) multiple parties may seek to enforce

19   his debt obligation against him; (2) the title to his home has been clouded and its

20   salability has been rendered unmarketable, as any buyer of Plaintiff's home will find

21   themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home

22   or get title insurance; (3) he has been paying the wrong party for an undetermined

23

24   _____

25         [8] "If a reasonable plaintiff would not have known of the existence of a possible claim within the
     limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit
26   until the plaintiff can gather what information he needs." *Garcia v. Wachovia Mortg. Corp.*, 676
     F.Supp.2d 895, 905 (2009) citing *Santa Maria,* 202 F.3d at 1178; see also *Stoll v. Runyon,* 165 F.3d
27   1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a
     claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond
28   the Plaintiff's control made it impossible to file a claim on time.") (citation omitted).

1  amount of time and overpaid in interest that was over calculated; (4) he is unable to

2  determine whether he sent his monthly mortgage payments to the right party; (5) his

3  credit and credit score have been damaged; (6) he has filed for bankruptcy; and (7) he

4  has expended significant funds to cover the cost of attorneys' fees and related costs.

5  **FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605 (RESPA)**

6  **[As Against JPMorgan and Doe Defendants]**

7  76.    Plaintiff hereby incorporates by reference each and every one of the

8  preceding paragraphs as if the same were fully set forth herein.

9  77.    Plaintiff's Loan is a federally regulated mortgage loan and is subject to the

10  federal Real Estate Settlement Procedures Act and its implementing regulation,

11  Regulation X.

12  78.    On or about June 10, 2011, Plaintiff sent a Qualified Written Request

13  ("QWR") to JPMorgan, via U.S. Post Certified Mail.  *See* **Exhibit "F."**

14  79.    The QWR contained information to enable JPMorgan to identify Plaintiff's

15  Loan and also contained requests for information of the Loan, specifically the identity

16  and contact information of the creditor of Plaintiff's Note, a complete loan history,

17  accumulated late fees and charges, and requested information to verify the validity of

18  the purported debt owed to Bank of America.

19  80.    Although, JPMorgan properly acknowledged the receipt of Plaintiff's QWR

20  they failed to substantively respond to the requests in the QWR within 30 days.  Rather,

21  JPMorgan simply affixed copies several copies of Mr. Tarver's Residential Loan

22  Application.  *See* **Exhibit "F."**

23  81.    Because the Loan is subject to RESPA, the Dodd-Frank Act, and

24  Regulation X, all Defendants were required to comply with section 1463 of the Dodd-

25  Frank Act.

26  82.    Defendants violated Section 6 of Regulation X upon receipt of Plaintiff's

27  QWR by their actions including, but not limited to: (a) failure to make appropriate

28  corrections in the account of the borrower, including the crediting of any late charges or

1  penalties, and transmitting to the borrower a written notification of the correction; and

2  (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by

3  furnishing adverse information regarding payment to credit reporting agencies as

4  defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

5      83.    JPMorgan violated 12 U.S.C. § 2605 and is subject to statutory damages,

6  civil liability, penalties, attorneys' fees, and actual damages. *See* 12 U.S.C.   § 2605.

7      84.    The actual pecuniary damages include, but are not limited to, the over

8  calculation and overpayment of interest on Plaintiff's Loan, the costs of repairing

9  Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs

10  associated with removing the cloud on his Property title and setting aside the trustee's

11  sale, and attorneys' fees and costs, in an amount to be proven at trial.

12      85.    As a direct and proximate result of the violations of RESPA, Dodd-Frank

13  Act, and Regulation X by JPMorgan, Plaintiff has suffered actual pecuniary damages,

14  including but not limited to statutory damages, civil liability, and attorneys' fees, in an

15  amount to be proven at trial.

16      86.    As a result of JPMorgan's violations of 12 U.S.C. § 2605, RESPA, the

17  Dodd-Frank Act, and Regulation X, Plaintiff has been damaged in the following ways:

18  (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to

19  his home has been clouded and its salability has been rendered unmarketable, as any

20  buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether

21  they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the

22  wrong party for an undetermined amount of time and overpaid in interest that was over

23  calculated; (4) he is unable to determine whether he sent his monthly mortgage

24  payments to the right party; (5) his credit and credit score have been damaged; (6) he

25  has filed for bankruptcy; and (7) he has expended significant funds to cover the cost of

26  attorneys' fees and related costs.

27  / / /

28  / / /

FIRST AMENDED COMPLAINT                                                          -23-

### FIFTH CAUSE OF ACTION –

### VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ.

**[Against Bank of America, JPMorgan, and Doe Defendants]**

87.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

88.    Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

89.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Bus. and Prof. Code section 17200, et seq.

90.    Cal. Bus. and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

91.    Defendant Bank of America, acting as the trustee of the WAMU Trust, has violated 15 U.S.C. § 1692e, by attempting to collect Plaintiff's debt obligation under false, deceptive, and misleading representation.

92.    Defendant JPMorgan violated 12 U.S.C. § 2605 by failing to acknowledge the receipt of Plaintiff's QWR within 5 days of receipt, and by failing to provide a substantive response within 30 days of receipt, as required by section 1463(c) of the Dodd-Frank Act.

93.    Defendants Bank of America and/or JPMorgan violated Cal. Penal Code section 532(f)(a)(4) by filing or causing the Assignment to be filed with the recorder of the Los Angeles county in connection with Plaintiff's mortgage loan transaction with knowledge that the Assignment contained a deliberate misstatement and misrepresentation that Bank of America had been assigned Plaintiff's Note and Mortgage.

/ / /

1  94. Defendants Bank of America and/or JPMorgan engaged in unfair,

2 unlawful,[9] and fraudulent business practices with respect to mortgage loan servicing and

3 related matters.

4  95. Defendants Bank of America and/or JPMorgan demanded and accepted

5 payments for debts that were non-existent.

6  96. Defendants Bank of America and/or JPMorgan reported payments as late to

7 credit bureaus without the legal right or authority to do so.

8  97. Defendants Bank of America acted as a beneficiary without the legal

9 authority to do so.

10  98. Defendants Bank of America and/or JPMorgan facilitated, aided, and

11 abetted the illegal, deceptive, and unlawful enforcement of Plaintiff's Note and

12 Mortgage and engaged in other illegal debt collection activities.

13  99. JPMorgan, acting as Plaintiff's mortgage servicer, has been acting in a

14 manner to mislead Mr. Tarver into believing that Bank of America and/or JPMorgan had

15 the authority to demand payments from him.

16  100. As alleged herein, Plaintiff's Note was not properly transferred to Bank of

17 America, who seeks to cause their purported authorized agent(s) to collect mortgage

18 payments and engage in other unlawful collection practices.

19  101. On information and belief, Bank of America does not have a perfected

20 security interest in Plaintiff's Note such that they can enforce Plaintiff's obligation

21 and/or collect mortgage payments.

22  102. Plaintiff alleges, on information and belief, Bank of America fraudulently

23 enforced a debt obligation in which they had no pecuniary, equitable, or legal interest.

24 Bank of America's conduct is part of a fraudulent debt collection scheme.

25

26

27

---

 [9] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal. 4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

28

FIRST AMENDED COMPLAINT  -25-

103.   The conduct described above by Bank of America and/or JPMorgan, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Defendants continued to demand and collect Plaintiff's mortgage payments.

104.   On information and belief, at all times material, Bank of America and/or JPMorgan had, and have, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account.  Plaintiff made payments based on these improper, inaccurate, and fraudulent representations.

105.   As more fully described above, Defendants Bank of America's and/or JPMorgan's acts and practices are unlawful.  This conduct is ongoing and continues to this date.

106.   As more fully described above, Defendants Bank of America's and/or JPMorgan's acts and practices are likely to deceive members of the public.  This conduct is ongoing and continues to this date.

107.   As more fully described above, Defendants Bank of America's and/or JPMorgan's acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have.  This conduct is ongoing and continues to this date.

108.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein; Defendants violated several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

109.   Plaintiff alleges that Defendants Bank of America's and/or JPMorgan's misconduct, as alleged herein, gave them an unfair competitive advantage over their competitors.  The scheme implemented by Defendants Bank of America and/or JPMorgan is designed to defraud California consumers and enrich the Bank of America and/or JPMorgan.

1   110.   The foregoing acts and practices have caused substantial harm to California

2   consumers, including Plaintiff.

3   111.   By reason of the foregoing, Bank of America and/or JPMorgan have been

4   unjustly enriched, by collecting payments that they are not entitled to, and should be

5   required to make restitution to Plaintiff and other California consumers who have been

6   harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and

7   Prof. Code sections 17203 and 17204.

8   112.   As a direct and proximate result of the actions of Bank of America and/or

9   JPMorgan, and each of them, stated above, Plaintiff has been injured in that a cloud has

10   been placed upon title to Plaintiff's Property and Bank of America and/or JPMorgan

11   have failed to remove this cloud from Plaintiff's title.

12   113.   Plaintiff requests the Court to issue an order compelling Bank of America

13   and/or JPMorgan, and any other Defendants claiming an interest in and to the Property

14   to take any and all actions necessary to remove the cloud they have placed upon his title

15   and an order enjoining such Defendants from taking such actions again in the future.

16   114.   As a direct and proximate result of the violations of Cal. Bus. and Prof.

17   Code section 17200 by Bank of America and/or JPMorgan, Plaintiff has suffered actual

18   pecuniary damages, including, but not limited to civil liability, restitution, injunctive

19   relief preventing Bank of America and/or JPMorgan from continuing to collect

20   mortgage payments, and attorneys' fees, in an amount to be proven at trial.

21   115.   As a result of Bank of America's and/or JPMorgan's violations of Cal. Bus.

22   and Prof. Code section 17200, Plaintiff has been damaged in the following ways: (1)

23   multiple parties may seek to enforce his debt obligation against him; (2) the title to his

24   home has been clouded and its salability has been rendered unmarketable, as any buyer

25   of Plaintiff's home will find themselves in legal limbo, unable to know whether they can

26   safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party

27   for an undetermined amount of time and overpaid in interest that was over calculated;

28   (4) he is unable to determine whether he sent his monthly mortgage payments to the

1   right party; (5) his credit and credit score have been damaged; (6) he has filed

2   bankruptcy; and (7) he has expended significant funds to cover the cost of attorneys'

3   fees and related costs.

### SIXTH CAUSE OF ACTION - ACCOUNTING

**[Against Bank of America, JPMorgan, and Doe Defendants]**

6   116.   Plaintiff hereby incorporates by reference each and every one of the

7   preceding paragraphs as if the same were fully set forth herein.

8   117.   Bank of America and JPMorgan, as its purported agent, have held

9   themselves out to be Plaintiff's creditor and mortgage servicer.  As a result of this

10   purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff

11   to properly account for payments made by Plaintiff.[10]

12   118.   As a result of the aforementioned fraudulent conduct, Plaintiff paid Bank of

13   America and JPMorgan his mortgage payments for a period of approximately five years.

14   However, for the reasons stated herein, none of this money was actually owed to Bank

15   of America or JPMorgan.  For that reason, these monies are due to be either credited

16   back to Plaintiff in full or credited to the rightful owner of Plaintiff's Note and

17   Mortgage.

18   119.   The amount of the money due from Defendants to Plaintiff is unknown to

19   Plaintiff and cannot be ascertained without an accounting of the receipts and

20   disbursements of the aforementioned transactions.  Plaintiff is informed and believes

21   and thereon alleges that the amount due to him exceeds $75,000.00.

22   / / /

23   / / /

24   / / /

25

26   [10] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is

27   impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233.  The elements for a claim for accounting are:  (1) fiduciary relationship or other circumstances appropriate to the remedy; and (2)

28   a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

FIRST AMENDED COMPLAINT                                                                    -28-

## SEVENTH CAUSE OF ACTION - BREACH OF CONTRACT

### [Against Bank of America, JPMorgan, and Doe Defendants]

120.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

121.   In the alternative, if the Court finds that Bank of America is a successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiff alleges that Defendants Bank of America breached the Deed of Trust by improperly crediting and debiting their account.

122.   On August 24, 2006, Plaintiff obtained the subject mortgage loan from Washington Mutual and executed a Note and Deed of Trust.

123.   Bank of America allegedly became a party to this contract when it was purportedly assigned MERS' interest in Plaintiff's Note and Deed of Trust.

124.   The Deed of Trust sets forth the dates that the monthly principal and interest payments were due and when late fees and other charges could be assessed.

125.   Section 2 of the Deed of Trust states that: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due."  *See* **Exhibit "H,"** attached hereto is a true and correct copy of the Deed of Trust.

126.   Plaintiff substantially performed all of his conditions in the Deed of Trust.

127.   Defendant Bank of America and/or JPMorgan breached the Deed of Trust by failing to apply the payments made by Plaintiff in the order of priority set forth in Section 2, and this resulted in improper fees and taxes being added to the balance of the Loan.

128.   Plaintiff was unaware that Defendants were failing to apply the payments in the way set forth in the Deed of Trust because Defendants fraudulently concealed this practice of applying Plaintiff's mortgage payments to Plaintiff's account.  Plaintiff could

not have reasonably discovered the impropriety of Defendants behavior because these facts were hidden from him and were not disclosed throughout the servicing of his Loan.

129.   Plaintiff could not have reasonably known of the existence of a breach of the Deed of Trust because Defendants fraudulently concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiff's account that did not comply with Section 2 of Plaintiff's Deed of Trust.

130.   As a proximate result of Defendants' breaches, Plaintiff has suffered compensatory damages in an amount to be proven at trial.  Plaintiff relied on Bank of America's and/or JPMorgan's misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party; (5) his credit and credit score have been damaged; (6) he has filed bankruptcy; and (7) he has expended significant funds to cover the cost of attorneys' fees and related costs.

## EIGHTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### [Against Bank of America, JPMorgan, and Doe Defendants]

131.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

132.   In the alternative, if the Court finds that Bank of America is a successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiff alleges that Defendants Bank of America breached the implied promise of good faith and fair dealing by making it impossible for Plaintiff to carry out his obligations under the

contract because of the improperly applied payments and addition of interest and improper fees to his account.

133.   In every contract or agreement there is an implied promise of good faith and fair dealing. Each party agrees to refrain from any action that would render performance of the contract impossible, and to do everything that the contract presupposes that each party will do to accomplish its purpose.[11] The implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.[12]

134.   As alleged above, Plaintiff entered into a contract (Deed of Trust) with Washington Mutual and substantially performed the conditions under the Deed of Trust.

135.   Bank of America allegedly became a party to this contract when it was purportedly assigned MERS' interest in Plaintiff's Note and Deed of Trust.

136.   Defendants enjoyed substantial discretionary power affecting the Plaintiff's rights under the Deed of Trust as detailed throughout this First Amended Complaint. Defendants are required to exercise such power in good faith.

137.   Defendants breached their duty of good faith by interfering with Plaintiff's ability to perform his obligations under the contract because Defendants improperly applied mortgage payments, incorrectly calculated interest, and improperly added fees to Plaintiff's account making it impossible for Plaintiff to ever fulfill his obligations.

---

[11] *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983); *Harm v. Frasher,* 181 Cal. App. 2d 405, 417 (1960).

[12] "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658 (1958) (internal citation omitted). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. The covenant thus cannot " 'be endowed with an existence independent of its contractual underpinnings.' " " It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-350 (2000) (citations omitted).

1   Defendants' failure to cooperate allowed them to collect more money from Plaintiff than

2   they were owed.[13]

3       138.   Plaintiff could not have reasonably known of the existence of a breach of

4   the implied covenant of good faith and fair dealing claim because Defendants

5   fraudulently concealed the fact that they were not applying payments in accordance with

6   the Deed of Trust thereby interfering with the Plaintiff's ability to perform under the

7   contract. Defendants concealed the improperly applied mortgage payments, the

8   incorrect calculation of interest, and the improper fees added to Plaintiff's account and

9   continued to render Plaintiff's performance of the contract impossible.

10       139.   As a proximate result of Defendants' breaches, Plaintiff has suffered

11   general and special damages in an amount to be proven at trial.

12       140.   Plaintiff relied on Bank of America's and/or JPMorgan's

13   misrepresentations and has been damaged in the following ways: (1) multiple parties

14   may seek to enforce his debt obligation against him; (2) the title to his home has been

15   clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's

16   home will find themselves in legal limbo, unable to know whether they can safely buy

17   Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an

18   undetermined amount of time and overpaid in interest that was over calculated; (4) he is

19   unable to determine whether he sent his monthly mortgage payments to the right party;

20   (5) his credit and credit score have been damaged; (6) he has filed for bankruptcy; and

21   (6) he has expended significant funds to cover the cost of attorneys' fees and related

22   costs.

23       WHEREFORE, Plaintiff prays as follows:

24       1.   For compensatory, special, and general damages in an amount according to

25   proof at trial, but not less than $5,000,000.00 against all Defendants;

26

27

28

---

[13] Witkin, Summary of California Law, Contracts, §744 (8th ed.); *see also Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314 (1997); *Harm v. Frasher*, 181 Cal. App. 2d 405, 415 (1960).

FIRST AMENDED COMPLAINT     -32-

1       2.     For punitive and exemplary damages in an amount to be determined by the

2  Court against all Defendants;

3       3.     For an order compelling Defendants to remove any instrument, including

4  the Assignment, which does or could be construed as constituting a cloud upon

5  Plaintiff's title to the Property;

6       4.     For a declaratory judgment finding that Defendants do not have any legally

7  cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's

8  Deed of Trust, or any other matter based on contract or any of the documents prepared

9  by Defendants, tendered to and executed by Plaintiff;

10      5.     For the Court to issue an order restraining Defendants, their agents, or

11  employees from continuing or initiating any action against the Property and enjoining

12  Defendants, their agents, or employees from doing so during the pendency of this

13  matter;

14      6.     For an order compelling Defendants to disgorge all amounts wrongfully

15  taken from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory

16  rate from the date the funds were first received from Plaintiff;

17      7.     For costs of suit incurred herein;

18      8.     For reasonable attorneys' fees incurred; and

19      9.     For such other and further relief as the Court may deem proper.

20

21  Dated:      January 9, 2012          PROSPER LAW GROUP, LLP

22

23                  By:

24                      Gordon F. Dickson

Deborah P. Gutierrez

25                      Vincent C. Granberry

Attorneys for Plaintiff,

26                      Daniel Tarver

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff Daniel Tarver hereby demands a trial by jury on all claims.

3

4   Dated:       January 9, 2012          PROSPER LAW GROUP, LLP

5

6

7                                        By:   _____

8                                              Gordon F. Dickson
                                               Deborah P. Gutierrez
9                                              Attorneys for Plaintiff,
                                               Daniel Tarver

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                                    -34-

# EXHIBIT A

## Securitization Structure



# EXHIBIT B

Section 10.05. *Governing Law*. This Agreement shall be construed in accordance with the laws of the State of Delaware without giving effect to its conflict of laws provisions and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws without giving effect to conflict of laws provisions.

A true and correct copy of the entire PSA may be found online at:

http://sec.gov/Archives/edgar/data/1374625/000127727706000724/exh41to8kpsaw amu2006_ar13.htm

# EXHIBIT C



Congressional Oversight Panel

November 16,
2010

# NOVEMBER

# OVERSIGHT REPORT[*]

Examining the Consequences of Mortgage
Irregularities for Financial Stability and Foreclosure
Mitigation

[*]Submitted under Section 125(b)(1) of Title 1 of the Emergency Economic
Stabilization Act of 2008, Pub. L. No. 110-343

# Table of Contents

Executive Summary ........................................................................................................4

Section One:

    A.  Overview ............................................................................................................7

    B.  Background ........................................................................................................9

    C.  Timeline .........................................................................................................10

    D.  Legal Consequences of Document Irregularities ...........................................14

        1.  Potential Flaws in the Recording and Transfer of Mortgages and Violations of Pooling and Servicing Agreements ................................16

        2.  Possible Legal Consequences of the Document Irregularities to Various Parties .............................................................................24

        3.  Additional Considerations ..........................................................................33

    E.  Court Cases and Litigation ..............................................................................34

        1.  Fraud Claims ..............................................................................................35

        2.  Existing and Pending Claims under Various Fraud Theories ......................40

        3.  Other Potential Claims ...............................................................................42

        4.  Other State Legal Steps ..............................................................................44

        5.  Other Possible Implications: Potential "Front-end" Fraud and Documentation Irregularities ...............................................................46

    F.  Assessing the Potential Impact on Bank Balance Sheets ..................................51

        1.  Introduction ...............................................................................................51

        2.  Foreclosure Irregularities: Estimating the Cost to Banks ..........................59

        3.  Securitization Issues and Mortgage Put-backs ..........................................63

G.  Effect of Irregularities and Foreclosure Freezes on Housing Market ................... 73

    1.  Foreclosure Freezes and their Effect on Housing ............................................. 73

    2.  Foreclosure Irregularities and the Crisis of Confidence .................................. 78

H.  Impact on HAMP ................................................................................................. 79

I.  Conclusion ............................................................................................................. 82

Section Two: Correspondence with Treasury ................................................................. 85

Section Three: TARP Updates Since Last Report ........................................................... 86

Section Four: Oversight Activities .................................................................................. 122

Section Five: About the Congressional Oversight Panel ................................................ 124

Appendices:

APPENDIX I: LETTER FROM CHAIRMAN TED KAUFMAN TO
SPECIAL MASTER PATRICIA GEOGHEGAN, RE: FOLLOW UP TO
EXECUTIVE COMPENSATION HEARING, DATED NOVEMBER 1, 2010 ...... 125

iii. Mortgage Securitization Process

**Figure 1: Transfer of Relevant Paperwork in Securitization Process[36]**



Securitizations of mortgages require multiple transfers, and, accordingly, multiple assignments. Mortgages that were securitized were originated through banks and mortgage brokers – mortgage originators. Next they were securitized by investment banks – the sponsors – through the use of special purpose vehicles, trusts that qualify for Real Estate Mortgage Investment Conduit (REMIC) status. These trusts are bankruptcy-remote, tax-exempt vehicles that pooled the mortgages transferred to them and sold interests in the income from those mortgages to investors in the form of shares. The pools were collateralized by the underlying real property, because a mortgage represents a first-lien security interest on an asset in the pool – a house.[37] A governing document for securitizations called a pooling and servicing agreement (PSA) includes various representations and warranties for the underlying mortgages. It also describes the responsibilities of the trustee, who is responsible for holding the recorded mortgage

---

[36] FBR Foreclosure Mania Conference Call, *supra* note 3.

[37] For an overview of REMICs, *see* Federal National Mortgage Association, *Basics of REMICs* (June 16, 2009) (online at www.fanniemae.com/mbs/mbsbasics/remic/index.jhtml). *See also* Internal Revenue Service, *Final Regulations Relating to Real Estate Mortgage Investment Conduits*, 26 CFR § 1 (Aug. 17, 1995) (online at www.irs.gov/pub/irs-regs/td8614.txt). Only the MBS investors are taxed on their income from the trusts' payments on the MBS. REMICs are supposed to be passive entities. Accordingly, with few exceptions, a REMIC may not receive new assets after 90 days have passed since its creation, or there will be adverse tax consequences. Thus, if a transfer of a loan was not done correctly in the first place, proper transfer now could endanger the REMIC status. For an overview of residential mortgage-backed securities in general, *see* American Securitization Forum, *ASF Securitization Institute: Residential Mortgage-Backed Securities* (2006) (online at www.americansecuritization.com/uploadedFiles/RMBS%20Outline.pdf).

documents, and of the servicer, who plays an administrative role, collecting and disbursing mortgage and related payments on behalf of the investors in the MBS.

As described above, in order to convey good title into the trust and provide the trust with both good title to the collateral and the income from the mortgages, each transfer in this process required particular steps.[38]  Most PSAs are governed by New York law and create trusts governed by New York law.[39]  New York trust law requires strict compliance with the trust documents; any transaction by the trust that is in contravention of the trust documents is void, meaning that the transfer cannot actually take place as a matter of law.[40]  Therefore, if the transfer for the notes and mortgages did not comply with the PSA, the transfer would be void, and the assets would not have been transferred to the trust.  Moreover, in many cases the assets could not now be transferred to the trust.[41]  PSAs generally require that the loans transferred to the trust not be in default, which would prevent the transfer of any non-performing loans to the trust now.[42]  Furthermore, PSAs frequently have timeliness requirements regarding the transfer in order to ensure that the trusts qualify for favored tax treatment.[43]

Various commentators have begun to ask whether the poor recordkeeping and error-filled work exhibited in foreclosure proceedings, described above, is likely to have marked earlier stages of the process as well.  If so, the effect could be that rights were not properly transferred during the securitization process such that title to the mortgage and the note might rest with another party in the process other than the trust.[44]

iv.  MERS

In addition to the concerns with the securitization process described above, a method adopted by the mortgage securitization industry to track transfers of mortgage servicing rights has come under question.  A mortgage does not need to be recorded to be enforceable as between the mortgagor and the mortgagee or subsequent transferee, but unless a mortgage is recorded, it does not provide the mortgagee or its subsequent transferee with priority over subsequent mortgagees or lien holders.[45]

---

[38] See Section D.1.a.ii, *supra*.

[39] FBR Foreclosure Mania Conference Call, *supra* note 3.

[40] N.Y. Est. Powers & Trusts Law § 7-2.4; FBR Foreclosure Mania Conference Call, *supra* note 3.

[41] FBR Foreclosure Mania Conference Call, *supra* note 3.

[42] Amended Complaint at Exhibit 5, page 13, *Deutsche Bank National Trust Company v. Federal Deposit Insurance Corporation*, No. 09-CV-1656 (D.D.C. Sept. 8, 2010) (hereinafter "Deutsche Bank v. Federal Deposit Insurance Corporation").

[43] See FBR Foreclosure Mania Conference Call, *supra* note 3.

[44] See, e.g., FBR Foreclosure Mania Conference Call, *supra* note 3.

[45] Restatement (Third) of Prop. (Mortgages) § 5.4 cmt. B (1997).

# EXHIBIT D

## ARTICLE I

Section 1.01. Definitions.

*Mortgage File*: The following documents or instruments with respect to each Mortgage Loan, (X) with respect to each Mortgage Loan that is not a Cooperative Loan:

(i) The original Mortgage Note endorsed (A) in blank, without recourse, (B) to the Trustee, without recourse, or (C) to the Trust, without recourse, and all intervening endorsements evidencing a complete chain of endorsements from the originator to the endorser last endorsing the Mortgage Note, or, in the event of any Destroyed Mortgage Note, a copy or a duplicate original of the Mortgage Note (or portion thereof, as applicable), together with an original lost note affidavit from the originator of the Mortgage Loan, the applicable Seller or the Company stating that the original Mortgage Note (or portion thereof, as applicable) was lost, misplaced or destroyed, together with a copy of the Mortgage Note (or portion thereof, as applicable); *provided, however,* that in the event that either (a) Washington Mutual Bank or Washington Mutual Bank fsb is the Seller of the Mortgage Loan or (b) Washington Mutual Mortgage Securities Corp. is the Seller of the Mortgage Loan and purchased the Mortgage Loan from Washington Mutual Bank or Washington Mutual Bank fsb, then the Mortgage Note need not be endorsed in blank or to the Trustee or the Trust as provided above, but, if not so endorsed, shall be made payable to, or properly endorsed to, Washington Mutual Bank or Washington Mutual Bank fsb, as applicable;

(ii) The Buydown Agreement, if applicable;

(iii) (1) (x) the original recorded Mortgage with evidence of recording thereon for the jurisdiction in which the Mortgaged Property is located (which original recorded Mortgage, in the case of a MOM Loan, shall set forth the MIN and shall indicate that the Mortgage Loan is a MOM Loan), (y) unless the Mortgage Loan is a MERS Loan, an original assignment of the Mortgage duly executed and acknowledged in recordable form (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, recorded originals of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment described in clause (y); or

(2) (x) a copy (which may be in electronic form) of the Mortgage (which Mortgage, in the case of a MOM Loan, shall set forth the MIN and shall indicate that the Mortgage Loan is a MOM Loan) which represents a true and correct reproduction of the original Mortgage and which has either been certified (i) on the face thereof by the public recording office in the appropriate jurisdiction in which the Mortgaged Property is located, or (ii) by the originator, the applicable Seller, the Servicer or the escrow or title company which provided closing services in connection with such Mortgage Loan as a true and correct copy the original of which has been sent for recordation, (y) unless the Mortgage Loan is a MERS Loan, an original assignment of the Mortgage duly executed and acknowledged in recordable form (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, true and correct copies, certified by the applicable county recorder or by the originator, the applicable Seller or the Servicer as described above, of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment described in clause (y);

*provided, however,* that in the event that either (a) Washington Mutual Bank or Washington Mutual Bank fsb is the Seller of the Mortgage Loan or (b) Washington Mutual Mortgage Securities Corp. is the Seller of the Mortgage Loan and purchased the Mortgage Loan from Washington Mutual Bank or Washington Mutual Bank fsb, then the Mortgage File need not include an assignment of the Mortgage executed in blank or to the Trustee or the Trust as provided in clause (X)(iii)(1)(y) or (X)(iii)(2)(y) above, as applicable, but the Mortgage File shall, unless the Mortgage Loan was originated by Washington Mutual Bank or Washington Mutual Bank fsb, include a complete chain of assignments of the related Mortgage from the originator of such Mortgage Loan to Washington Mutual Bank or Washington Mutual Bank fsb, as applicable; and

(iv) For any Mortgage Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment;

and (Y) with respect to each Cooperative Loan:

(i) The original Mortgage Note endorsed (A) in blank, without recourse, (B) to the Trustee, without recourse, or (C) to the Trust, without recourse, and all intervening endorsements evidencing a complete chain of endorsements from the originator to the endorser last endorsing the Mortgage Note, or, in the event of any Destroyed Mortgage Note, a copy or a duplicate original of the Mortgage Note (or portion thereof, as applicable), together with an original lost note affidavit from the originator of the Cooperative Loan, the applicable Seller or the Company, as applicable, stating that the original Mortgage Note (or portion thereof, as applicable) was lost, misplaced or destroyed, together with a copy of the Mortgage Note (or portion thereof, as applicable); *provided, however,* that in the event that either (a) Washington Mutual Bank or Washington Mutual Bank fsb is the Seller of the Mortgage Loan or (b) Washington Mutual Mortgage Securities Corp. is the Seller of the Mortgage Loan and purchased the Mortgage Loan from Washington Mutual Bank or Washington Mutual Bank fsb, then the Mortgage Note need not be endorsed in blank or to the Trustee or the Trust as provided above, but, if not so endorsed, shall be made payable to, or properly endorsed to, Washington Mutual Bank or Washington Mutual Bank fsb, as applicable;

(ii) A counterpart of the Cooperative Lease and the Assignment of Proprietary Lease;

(iii) The Cooperative Stock Certificate, together with an undated stock power or other similar instrument executed in blank;

(iv) The Recognition Agreement;

(v) The Security Agreement;

(vi) Copies of the original UCC financing statement, and any continuation statements or amendments thereof, each with evidence of recording thereof, perfecting the security interest granted under the Security Agreement and the Assignment of Proprietary Lease;

(vii) Copies of the filed UCC assignments or amendments of the UCC financing statements described in clause (vi) above showing an unbroken chain of assignments from the originator to the Trustee or the Trust, each with evidence of recording thereof;

(viii) Executed assignments of the interest of the originator in the Security Agreement, the Assignment of Proprietary Lease and the Recognition Agreement, showing an unbroken chain of assignments from the originator to the Trustee or the Trust; and

(ix) For any Cooperative Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment;

       *provided, however,* that in the event that either (a) Washington Mutual Bank or Washington Mutual Bank fsb is the Seller of the Mortgage Loan or (b) Washington Mutual Mortgage Securities Corp. is the Seller of the Mortgage Loan and purchased the Mortgage Loan from Washington Mutual Bank or Washington Mutual Bank fsb, then the Mortgage File need not include (1) a UCC assignment or amendment of the UCC financing statement referenced in clause (Y)(vi) above to the Trustee or the Trust as provided in clause (Y)(vii) above, but the Mortgage File shall, unless the Cooperative Loan was originated by Washington Mutual Bank or Washington Mutual Bank fsb, include a UCC assignment or amendment of such UCC financing statement to Washington Mutual Bank or Washington Mutual Bank fsb, as applicable, or (2) an assignment of the interest of the originator in the Security Agreement, the Assignment of Proprietary Lease and the Recognition Agreement to the Trustee or the Trust as provided in clause (Y)(viii) above, but the Mortgage File shall, unless the Cooperative Loan was originated by Washington Mutual

Bank or Washington Mutual Bank fsb, include an assignment of such interest to Washington Mutual Bank or Washington Mutual Bank fsb, as applicable...

Section 2.04. *Conveyance of Mortgage Pool Assets; Security Interest.*

The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets. The Trust, as payment of the purchase price of the Mortgage Pool Assets and in consideration of the Company making the Initial Group 1 Servicing Fee Shortfall Deposit, the Initial Group 2 Servicing Fee Shortfall Deposit and the Initial Interest Shortfall Deposit pursuant to Section 2.01, shall, on the Closing Date, issue the REMIC I Regular Interests and the Class R-1 Residual Interest to the Company. The REMIC I Regular Interests and the Class R-1 Residual Interest shall together be a separate series of beneficial interests in the assets of the Trust consisting of the Mortgage Pool Assets pursuant to Section 3806(b)(2) of the Statutory Trust Statute.

It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the Mortgage Pool Assets. It is, further, not the intention of the parties that such conveyance be deemed the grant of a security interest in the Mortgage Pool Assets by the Company to the Trust to secure a debt or other obligation of the Company. However, in the event that, notwithstanding the intent of the parties, the Mortgage Pool Assets are held to be the property of the Company, or if for any other reason this Agreement is held or deemed to create a security interest in the Mortgage Pool Assets, then

(a) this Agreement shall constitute a security agreement;

(b) the conveyance provided for in this Section 2.04 shall be deemed to be a grant by the Company to the Trust of, and the Company hereby grants to the Trust, to secure all of the Company's obligations hereunder, a security interest in all of the Company's right, title, and interest, whether now owned or hereafter acquired, in and to:

> (I) The Mortgage Pool Assets;

> (II) All accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, and other minerals, consisting of, arising from, or relating to, any of the foregoing; and

> (III) All proceeds of the foregoing.

The Company shall file such financing statements, and the Company, the Servicer and the Trustee acting on behalf of the Trust at the direction of the Company shall, to the extent consistent with this Agreement, take such other actions as may be necessary to ensure that, if this Agreement were found to create a security interest in the Mortgage Pool Assets, such security interest would be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Agreement. In connection herewith, the Trust shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as in force in the relevant jurisdiction.

A true and correct copy of the PSA may be found at:

http://sec.gov/Archives/edgar/data/1374625/000127727706000724/exh41to8kpsawamu2006_ar13.htm

**EXHIBIT E**

Colleen Irby
LS Section Manager at California Reconveyance Company
Greater Los Angeles Area   Banking

| | |
|---|---|
| Current | • LS Section Manager at California Reconveyance Company |
| Education | • Mt. Hood Community College |
| Connections | **1 connection** |

## Colleen Irby's Experience

**LS Section Manager**
**California Reconveyance Company**
Banking industry
March 1984 – Present (27 years 4 months)

## Colleen Irby's Education

**Mt. Hood Community College**
1980 – 1982

## Colleen Irby's Contact Settings

**Interested In**
- job inquiries
- business deals
- getting back in touch

- expertise requests
- reference requests

## View Colleen Irby's full profile to...

- See who you and Colleen Irby know in common
- Get introduced to Colleen Irby
- Contact Colleen Irby directly

View Full Profile

LinkedIn member directory - Browse members by country a b c d e f g h i j k l m n o p q r s t u v w x y z more

LinkedIn Corporation © 2011

# EXHIBIT F



**PROSPER** LAW

PROSPER LAW CORPORATION
6100 CENTER DRIVE
SUITE 1050
LOS ANGELES, CA 90045
—
TELEPHONE: (310) 893-6200
FAX: (310) 988-2930
WEBSITE: www.prosperlaw.com

GORDON F. DICKSON
DEBORAH P. GUTIERREZ
DONNY E. BRAND
MARYANNE PITCHER
KELLEY E. BASKINS
HAZEL S. CHU
—
OF COUNSEL:
RICHARD M. GEE ◆
KEITH R. OLIVER
CARLOS A. LLARENA
MICHAEL KIM

◆ MEMBER CA & CO BARS

ADMINISTRATOR:
ROBYN NAKAGAWA

SAN FRANCISCO OFFICE
—
450 HARRISON STREET, SUITE 310
SAN FRANCISCO, CALIFORNIA 94105

SAN DIEGO OFFICE
—
701 B STREET, SUITE 234
SAN DIEGO, CALIFORNIA 92101

SENDER'S E-MAIL:
deborah@prosperlaw.com
Telephone (310) 893-6202

October 24, 2011

<u>Via US Certified Mail #7011 0470 0002 8840 8857</u>

J.P. Morgan Chase Legal Department
CT Corporation System
1801 West Bay Drive NE, Ste 206
Olympia, WA 98502

Re:   **QUALIFIED WRITTEN REQUEST**
        **Loan Number:** 3010265803
        **Our Client:** Daniel Tarver
        **Property Address:** 3210 Coldwater Canyon Lane, Beverly Hills, CA 90210

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

To Whom It May Concern:

Please be advised this office has been retained by Daniel Tarver ("Mr. Tarver") in regards to the accounting and servicing of this loan and the need for understanding and clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date. The subject property is located at 3210 Coldwater Canyon Lane, Beverly Hills, CA 90210.

This letter concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients may be legally obligated to.

**In accordance with RESPA and Section 131(f) of the Truth-in-Lending Act, 15 U.S.C. Section 1641(f)(2), please provide the following information:**

1. A true and present copy of the promissory note and deed of trust;

Los Angeles              San Francisco              San Diego

Page 2 of 4

2. A complete life of loan transactional history;

3. The Transaction Codes for the software platform of the Servicer;

4. The Code definitions in plain English;

5. The Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of all of the accounts in an XL spreadsheet format;

6. The MERS Milestone Reports and the Edgar website address for the Pooling and Servicing Agreement, Prospectus and Prospectus Supplement;

7. The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note;

8. Copies of all collection notes and communications files;

9. An itemized statement of the amount needed to fully reinstate the loan;

10. All communications with any non-lawyer third-party providers; and

11. All Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan.

Under RESPA, this information must be provided and cannot be claimed as "confidential," "proprietary," or otherwise private. Failure to disclose the requested information will be considered failure to comply with this Qualified Written Request and thus a violation of 15 U.S.C. section 1601.

I also hereby demand that a chain of transfer from Chase to wherever the security currently is be promptly sent to my office. Absent the actual evidence of the security, Mr. Tarver has no choice but to dispute the validity of Chase's lawful ownership, funding, entitlement right, and the current debt Chase claims Mr. Tarver owes. By debt I am referring to the principal balance Chase claims Mr. Tarver owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by Chase or any trust or entity Chase may service or sub-service for.

To independently validate this debt, my office needs to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until responses are provided to each of the requests.

I also request that Chase conduct Chase's own investigation and audit of this account since its inception to validate the debt Chase currently claims Mr. Tarver owes. I would like Chase to validate the debt so that it is accurate.

Please be aware that potential abuses by Chase or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance Mr. Tarver owes;

- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or;
- Assessed, charged and/or collected fees, expenses and miscellaneous charges Mr. Tarver is not legally obligated to pay under this mortgage, note and/or deed of trust.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer the questions provided in this letter within sixty (60) days of its receipt.

Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

## Default Provisions under this QUALIFIED WRITTEN REQUEST

Chase or any agents, transfers, or assigns' omissions of, or agreement by silence to this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to, including but not limited by, any violations of law and/or immediate termination and/or removal of any and all right, title and interest (liens) in Mr. Tarver's, or any property or collateral, connected to Mr. Tarver's or loan number 3010265803, and waives any and all immunities and/or defenses to claims and/or violations agreed to in this RESPA REQUEST, including but not limited to:

1. Mr. Tarver's right to, by Chase's breach of fiduciary responsibility, fraud, and/or misrepresentation, revoke and rescind any and all power of attorney or appointment Chase may have or may have had in connection with loan number 3010265803, and any property and/or real estate connected with loan number 3010265803;

2. Mr. Tarver's right to have any certificated or uncertificated security re-registered in Mr. Tarver's, and only Mr. Tarver's name;

3. Mr. Tarver's right of collection via Chase's liability insurance and/or bond;

4. Mr. Tarver's entitlement in filing and executing any instruments, as power of attorney for and by Chase ,including but not limited to a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Chase is located;

5. Chase's right to damages because of Chase's wrongful registration and breach of intermediary responsibility with regard to Mr. Tarver's asset, by way of Chase issuing to Mr. Tarver a certified check for the original value of Mr. Tarver's monetary instrument;

6. Mr. Tarver's right to have loan number 3010265803 completely set off because of Chase's wrongful registration and breach of intermediary responsibility with regard to Mr. Tarver's monetary instrument/asset by Chase's sending confirmation of set off of wrongful liability of Mr. Tarver and issuing a certified check for the difference between the original value of Mr. Tarver's monetary

instrument/asset and what Mr. Tarver mistakenly sent to Chase as a payment for such wrongful liability.

Chase or any of Chase's transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws - signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury, while offering direct testimony with the official capacity as appointed agent for Chase in accordance with Chase's Articles of Incorporation, by-laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association.

Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Chase's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

You should be advised that you must acknowledge receipt of this request within five (5) business days, and respond within thirty (30) business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) as amended effective July 16, 2010 by the Dodd-Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).

Power of Attorney: When Chase fails by not rebutting to any part of this RESPA REQUEST, Chase agrees with the granting unto Mr. Tarver unlimited Power of Attorney and any and all full authorization in signing and endorsing Chase's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by Chase waives any and all claims and/or defenses of Chase, and remains in effect until the satisfaction of all obligations by Chase have been satisfied.

If you have any questions, please do not hesitate to contact my office.

Sincerely,

Deborah P. Gutierrez, Esq.
*Managing Partner*

DPG/slm

# EXHIBIT G

Chase (OH4-7302)
3415 Vision Drive
Columbus, OH 43219-6009



May 13, 2011

Daniel Tarver
3210 Coldwater Canyon Lane
Beverly Hills, CA 90210-1235

Re:  Loan Number ******5803

**Document Copy Enclosed**

Dear Daniel Tarver:

I am writing in response to your request for documents for the account referenced above.

I have enclosed the document copies you requested.

We appreciate your business. If you have questions, please call us at the telephone number below.

Sincerely,

Chase
(800) 848-9136
(800) 582-0542 TDD / Text Telephone
www.chase.com

Enclosure

CC116

SEP-05-2006  09:17     CAPITAL FINANCIAL ADVISOR              1 310 444 7150     P.02/06

## UNIFORM RESIDENTIAL LOAN APPLICATION
### CAPITAL FINANCIAL ADVISORS, INC

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, or the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____   Co-Borrower _____

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☒ Conventional   ☐ Other (explain):   ☐ FHA   ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|
| Amount $ 1,500,000.00 | Interest Rate 6.125 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate  ☐ GPM  ☒ Other (explain): 5/1 I/O  ☐ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 3210 Coldwater Canyon Avenue, Los Angeles, CA 91604 | | No. of Units 1 |
|---|---|---|
| Legal Description of Subject Property (attach description if necessary) | | Year Built 1971 |

| Purpose of Loan ☐ Purchase  ☒ Refinance  ☐ Construction  ☐ Construction-Permanent  ☐ Other (explain): | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2005 | Original Cost $ 1,600,000 | Amount Existing Liens $ 1,260,000 | Purpose of Refinance consol purch 1st & 2nd | Describe Improvements ☒ made  ☐ to be made   Complete renovation   Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Daniel Tarver | Manner in which Title will be held Single Man | Estate will be held in: ☒ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Equity from Subject Property |
|---|

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | DANIEL TARVER | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Social Security Number / Home Phone (incl. area code) / DOB (MM/DD/YYYY) / Yrs. School | 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 / (310) 399-0982 / 11/04/1959 / 16 | Social Security Number / Home Phone (incl. area code) / DOB (MM/DD/YYYY) / Yrs. School |
| | ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated   Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated   Dependents (not listed by Borrower) no.  ages |
| Present Address (street, city, state, ZIP) ☒ Own  ☐ Rent 1.3 No. Yrs. | 3210 Coldwater Canyon Avenue Los Angeles, CA 91604 | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent ___ No. Yrs. |
| Mailing Address, if different from Present Address | 3210 Coldwater Canyon Lane Beverly Hills, CA 90210 | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☒ Own  ☐ Rent 0.8 No. Yrs. | 705 4th Avenue Venice, CA 90291 | Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent ___ No. Yrs. |
|---|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer ☒ Self Employed | Daniel C. Tarver 3210 Coldwater Canyon Lane Beverly Hills, CA 90210 | Name & Address of Employer ☐ Self Employed |
| Yrs. on this job | 17Y | Yrs. on this job |
| Yrs. employed in this line of work/profession | 21Y | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business Producer TV Commercials Entertainment & N/S Investor | Business Phone (incl. area code) (310) 433-5143 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed   Dates (from - to) | Name & Address of Employer ☐ Self Employed   Dates (from - to) |
|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business   Business Phone (incl. area code) | Position/Title/Type of Business   Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed   Dates (from - to) | Name & Address of Employer ☐ Self Employed   Dates (from - to) |
|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business   Business Phone (incl. area code) | Position/Title/Type of Business   Business Phone (incl. area code) |

SEP-05-2025  09:17      CAPITAL FINANCIAL ADVISOR              1 310 444 7190    P.03/06
                        CAPITAL FINANCIAL ADVISORS, INC.

## V.   MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | 26,500.00 | $ | $ 26,500.00 | Rent | $ | XXXXXXXXXX |
| Overtime | | | | First Mortgage (P&I) | 4,891.00 | 7,656.25 |
| Bonuses | | | | Other Financing (P&I) | 2,377.00 | |
| Commissions | | | | Hazard Insurance | 201.00 | 526.04 |
| Dividends/Interest | | | | Real Estate Taxes | 1,442.51 | 1,442.51 |
| Net Rental Income | 407.42 | | 407.42 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 26,907.42 | $ | $ 26,907.42 | Total | $ 8,914.51 | $ 9,624.80 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| | Describe Other Income     Notice: Alimony, child support, or separate maintenance income need not be revealed if the | Monthly Amount |
|---|---|---|
| B/C | Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | $ |

## VI.   ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company   (Charge Acct.) | $ Payment/Months | $ |
| List checking and saving accounts below | | Citi Cards CBSDNA | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Washington Mutual Bank 1010 VOD P.O. Box 1060 Northridge, CA 91328 | | | | |
| | | Acct. no. 5466160120822489 | 245.00 / | 8,928 |
| Acct. no. 971-305986-1 | 169,631.45 | Name and address of Company   (Charge Acct.) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | MBNA AMERICA | | |
| Washington Mutual Bank 1010 VOD P.O. Box 1060 Northridge, CA 91328 | | | | |
| | | Acct. no. 4264290080010911 | 414.00 / | 14,659 |
| Acct. no. 097-499019-9 | 8,976.69 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | See Schedule of Real Estate | 18,958.00 | 3,044,106 |
| Morgan Stanley DW Inc 601 S. Figueroa St 28th Flr Los Angeles, CA 90017 | | | | |
| | | Acct. no. | | |
| Acct. no. 237-26190-204 | 13,386.18 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stock & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 191,396 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 5,350,000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | XXXXXXXXXX |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | XXXXXXXXXX |
| | | Total Monthly Payments | $ 19,617.00 | |
| Total Assets  a. | $ 5,541,396 | Net Worth (a minus b) ► | $ 2,473,704 | Total Liabilities  b. | $ 3,067,692 |

Freddie Mac Form 65 7/05                              Page 2 of 4                              Fannie Mae Form 1003 7/05

Borrower's Initials                   GENESIS 2000, INC. * WIN7.0 * (800) 882-0504                   Co-Borrower's Initials

SEP-05-2006  09:17      CAPITAL FINANCIAL ADVISOR      1 310 444 7190    P.04/06

## CAPITAL FINANCIAL ADVISORS, INC

### VI.  ASSETS AND LIABILITIES (conL)

Schedule of Real Estate Owned  (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **See Schedule of Real Estate** | Totals | **5,350,000** | **3,044,106** | **19,945.00** | **18,958.00** | **4,507.84** | **407.42** |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

---

### VII.  DETAILS OF TRANSACTION

| | |
|---|---|
| a.  Purchase price | $ |
| b.  Alterations, improvements, repairs | |
| c.  Land (if acquired separately) | |
| d.  Refinance (incl. debts to be paid off) | 1,260,000.00 |
| e.  Estimated prepaid items | 7,551.37 |
| f.  Estimated closing costs | 13,392.00 |
| g.  PMI, MIP, Funding Fee | |
| h.  Discount (if Borrower will pay) | |
| i.  Total costs (add items a through h) | 1,280,943.37 |
| j.  Subordinate financing | |
| k.  Borrower's closing costs paid by Seller | |
| l.  Other Credits (explain) | |
| Paid Charges in GFE | 900.00 |
| m.  Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,500,000.00 |
| n.  PMI, MIP, Funding Fee financed | |
| o.  Loan amount (add m & n) | 1,500,000.00 |
| p.  Cash  to   Borrower (subtract j, k, l & o from i) | 219,956.63 |

### VIII.  DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes / No | Co-Borrower Yes / No |
|---|---|---|
| a.  Are there any outstanding judgments against you? | ☐  ☒ | ☐  ☐ |
| b.  Have you been declared bankrupt within the past 7 years? | ☐  ☒ | ☐  ☐ |
| c.  Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐  ☒ | ☐  ☐ |
| d.  Are you a party to a lawsuit? | ☐  ☒ | ☐  ☐ |
| e.  Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment?  (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐  ☒ | ☐  ☐ |
| f.  Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐  ☒ | ☐  ☐ |
| g.  Are you obligated to pay alimony, child support, or separate maintenance? | ☐  ☒ | ☐  ☐ |
| h.  Is any part of the down payment borrowed? | ☐  ☒ | ☐  ☐ |
| i.  Are you a co-maker or endorser on a note? | ☐  ☒ | ☐  ☐ |
| j.  Are you a U.S. citizen? | ☒  ☐ | ☐  ☐ |
| k.  Are you a permanent resident alien? | ☒  ☐ | ☐  ☐ |
| l.  Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒  ☐ | ☐  ☐ |
| m.  Have you had an ownership interest in a property in the last three years? | ☒  ☐ | ☐  ☐ |
| (1)  What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR/IP | |
| (2)  How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

---

### IX.  ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 9/14/06 | X | |

---

### X.  INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER  ☐ I do not wish to furnish this information | CO-BORROWER  ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity:  ☐ Hispanic or Latino   ☒ Not Hispanic or Latino | Ethnicity:  ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race:  ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | Race:  ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex:  ☐ Female   ☒ Male | Sex:  ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☒ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Rosalie Rains | CAPITAL FINANCIAL ADVISORS, INC. |
| | Interviewer's Signature          Date 9/14/06 | 11111 SANTA MONICA BLVD. |
| | Interviewer's Phone Number (incl. area code) | SUITE 500 |
| | (310) 444-7191    FAX:(310) 444-7190 | LOS ANGELES, CA 90025 |

Freddie Mac Form 65 7/05                 Page 3 of 4                 Fannie Mae Form 1003 7/05

GENESIS2000, INC. • "W17.0" (800) 882-0504

SEP-05-2006  09:17      CAPITAL FINANCIAL ADVISOR          1 310 444 7190      P.05/06

Continuation Sheet/Residential Loan Application

### CAPITAL FINANCIAL ADVISORS, INC.

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower DANIEL TARVER | Agency Case Number |
|---|---|---|
| | Co-Borrower | Lender Case Number |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 8/24/06 | X | |

Freddie Mac Form 65 7/05          Page 4 of 4          Fannie Mae Form 1003 7/05

GENESIS 2000, INC. ™ WIN,0 ™ (800) 599-0504

# Uniform Residential Loan Application

**CAPITAL FINANCIAL ADVISORS, INC.**

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____ Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☒ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount $ 1,500,000 | Interest Rate %/ | No. of Months | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☒ Other (explain): 5/1  interest only ☐ ARM (type): |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1977 |
|---|---|

| Purpose of Loan: ☐ Purchase ☒ Refinance ☐ Construction ☐ Construction-Permanent ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired 2005 | Original Cost $ 1,600,000 | Amount Existing Liens $ 1,260,000 | Purpose of Refinance Consol 1st 2nd recoup | Describe Improvements ☒ made ☐ to be made   Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Daniel Tarver   Some remodel cost | Manner in which Title will be held Single Man | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Equity |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Daniel Tarver | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 255988808 | Home Phone (incl. area code) 310 599 6982 | DOB (MM/DD/YYYY) 11/04/1955 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 8   ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 14 No. Yrs. 3210 Coldwater Canyon Ave Los Angeles CA 91604 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address 3210 Coldwater Canyon Lane Beverly Hills CA 90210 | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☒ Own ☐ Rent 10 No. Yrs. 706 4th Avenue Venice CA 90291 | Former Address (street, city, state, ZIP) ☒ Own ☐ Rent   No. Yrs. 626 Vernon Ave Venice CA 90291 |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer ☒ Self Employed   Daniel C. Tarver 3210 Coldwater Canyon Lane Beverly Hills CA 90210 | Yrs. on this job 17   Yrs. employed in this line of work/profession 21 | Name & Address of Employer ☐ Self Employed | Yrs. on this job   Yrs. employed in this line of work/profession |

| Position/Title/Type of Business Producer TV/Film/Entertainment | Business Phone (incl. area code) 310 433 5143 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

CAPITAL FINANCIAL ADVISORS, INC.

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 26500 | $ | $ 26500 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 4895 | $ |
| Bonuses | | | | Other Financing (P&I) | 2377 | |
| Commissions | | | | Hazard Insurance | 200 | |
| Dividends/Interest | | | | Real Estate Taxes | 1443 | |
| Net Rental Income | 407.42 | | 407.42 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $26907.42 | $ | $ 2.6907.42 | Total | 8915 | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI.   ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☐ Not Jointly

| ASSETS<br>Description | Cash or Market Value | | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| | | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and saving accounts below | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union<br>Washington Mutual | | | Citi Cards | 245 | 8928 |
| | | | Acct. no. | | |
| Acct. no. 871-305966-1   $ 169631.45 | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union<br>Washington Mutual | | | MBNA | 414 | 14658 |
| | | | Acct. no. | | |
| Acct. no. 097-459019-1   $ 8578.68 | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union<br>Morgan Stanley DW | | | ABN AMRO<br>(1422 Collier   30-units) | 5825 | 659547 |
| | | | Acct. no. | | |
| Acct. no. 257-26190-204   13 386.68 | | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | HomeComings Financial<br>(8098 Summermoon) | 1436 | 266250 |
| | | | Acct. no. | | |
| Acct. no.   $ | | | Name and address of Company | $ Payment/Months | $ |
| Stock & Bonds (Company name/number & description) | $ | | Indy Mac<br>(706 4th Ave 1st) | 2557 | 608800 |
| | | | Acct. no. | | |
| Life insurance net cash value<br>Face amount: $ | $ | | Name and address of Company | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ | | Lamd<br>(7064th Ave 2nd) | 1688 | 249509 |
| Real estate owned (enter market value from schedule of real estate owned) | $ | | | | |
| Vested interest in retirement fund | $ | | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | CWBA 1st | 4895 | 1,009000* |
| Automobiles owned (make and year) | $ | | CWBC 2nd | 2377 | 260000* |
| | | | Acct. no. | | |
| Other Assets (itemize) | $ | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | | Total Monthly Payments | $ | |
| Total Assets a. $ | | | Net Worth (a minus b) | $ | Total Liabilities b. $ |

**CAPITAL FINANCIAL ADVISORS, INC.**

## VI.  ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| See attached Schedule | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name | Creditor Name | Account Number

## VII.  DETAILS OF TRANSACTION

| a. Purchase price | $ |
|---|---|
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | |
| p. Cash ☐ Borrower (subtract j, k, l & o from i) | |

## VIII.  DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX.  ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: [text continues]

Borrower's Signature X _____ Date 8/4/06   Co-Borrower's Signature X _____ Date

## X.  INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. [text continues]

**BORROWER** ☐ I do not wish to furnish this information
**CO-BORROWER** ☐ I do not wish to furnish this information

| | BORROWER | CO-BORROWER |
|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino ☒ Not Hispanic or Latino | ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: | ☐ Female ☒ Male | ☐ Female ☐ Male |

To be Completed by Interviewer
This application was taken by:
☒ Face-to-face interview
☐ Mail
☐ Telephone
☐ Internet

Interviewer's Name (print or type): Rosalie Karas
Interviewer's Signature _____ Date 8/4/06
Interviewer's Phone Number (incl. area code)

Name and Address of Interviewer's Employer
**CAPITAL FINANCIAL ADVISORS**
11111 SANTA MONICA BLVD., #500
LOS ANGELES, CA 90025
1-310-444-7191
FAX 1-310-444-7190

Freddie Mac Form 65  7/05    Page 3 of 4    Fannie Mae Form 1003  7/05
GENESIS 2000, INC. *W17.0* (800) 882-0504

## Continuation Sheet/Residential Loan Application

CAPITAL FINANCIAL ADVISORS, INC.

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 8/4/06 | X | |

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____  Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA<br>☐ FHA | ☒ Conventional<br>☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount<br>$ 1,500,000.00 | Interest Rate<br>5.75 % | No. of Months<br>360 | Amortization Type: | ☒ Fixed Rate  ☐ Other (explain):<br>☐ GPM  ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP)  3210 Coldwater Canyon Avenue  Los Angeles, CA 91604 | No. of Units<br>1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) | Year Built<br>1971 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain):<br>☒ Refinance  ☐ Construction-Permanent | Property will be:<br>☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost<br>$ | Amount Existing Liens<br>$ | (a) Present Value of Lot<br>$ | (b) Cost of Improvements<br>$ | Total (a + b)<br>$ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired<br>2005 | Original Cost<br>$ 1,400,000.00 | Amount Existing Liens<br>$ 0.00 | Purpose of Refinance<br>Cash, Cash-Out/Other | Describe Improvements  Complete renovation<br>Cost: $ 0.00 | ☐ to be made |
|---|---|---|---|---|---|

| Title will be held in what Name(s)<br>Daniel Tarver | Manner in which Title will be held<br>Single Man | Estate will be held in:<br>☒ Fee Simple<br>☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable)<br>DANIEL TARVER | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number<br>253988808 | Home Phone (incl. area code)<br>(310) 399-0982 | DOB (mm/dd/yyyy)<br>11/04/1958 | Yrs. School<br>16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Co-Borrower)<br>no. 0   ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Borrower)<br>no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent 1 No. Yrs.<br>3210 Coldwater Canyon Avenue  Los Angeles, CA 91604 0 Mos. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ___ No. Yrs. |
|---|---|
| Mailing Address, if different from Present Address<br>3210 Coldwater Canyon Lane  Beverly Hills, CA 90210 | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☒ Own  ☐ Rent 0 No. Yrs.<br>706 4th Avenue  Venice, CA 90291  10 No. Mos. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|

| Name & Address of Employer<br>Daniel C. Tarver<br>3210 Coldwater Canyon Lane<br>Beverly Hills, CA 90210 | ☐ Self Employed | Yrs. on this job<br>17 Yrs 0 Mos<br>Yrs. employed in this line of work/profession<br>21 | Name & Address of Employer | ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |
|---|---|---|---|---|---|

| Position/Title/Type of Business<br>Producer TV Commercials E | Business Phone (incl. area code)<br>(310) 433-5143 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Borrower | | | | IV. EMPLOYMENT INFORMATION (cont'd) | | Co-Borrower | |

| Name & Address of Employer | ☐ Self Employed | Dates (from – to) | | Name & Address of Employer | ☐ Self Employed | Dates (from – to) |
|---|---|---|---|---|---|---|
| | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from – to) | | Name & Address of Employer | ☐ Self Employed | Dates (from – to) |
| | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | | Position/Title/Type of Business | Business Phone (incl. area code) | |

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 26,500.00 | $ | $ 26,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 4,895.00 | $ 7,187.50 |
| Bonuses | | | | Other Financing (P&I) | 2,377.00 | |
| Commissions | | | | Hazard Insurance | 200.00 | 526.04 |
| Dividends/Interest | | | | Real Estate Taxes | 1,442.51 | 1,442.51 |
| Net Rental Income | 407.42 | | 407.42 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | 407.42 | | 407.42 | Homeowner Assn. Dues | | |
| Total | $ 27,314.84 | $ | $ 27,314.84 | Other: | | |
| | | | | Total | $ 8,914.51 | $ 9,156.05 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | | $ 407.42 |
| | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | | | |
| Cash deposit toward purchase held by: | $ | | | |

List checking and savings accounts below

| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ 8,928.00 |
| Washington Mutual Bank 1010 VOD P.O. Box 1080 Northridge, CA 91328 | | Citi Cards CBSDNA | 245.00/36 | |
| Acct. no. 871-305966-1 | $ 169,631.45 | Acct. no. 5466160120822489 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ 14,658.00 |
| Washington Mutual Bank 1010 VOD P.O. Box 1080 Northridge, CA 91328 | | MBNA AMERICA | 414.00/35 | |
| Acct. no. 097-439019-9 | $ 8,378.68 | Acct. no. 4264290080410911 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ 659,547.00 |
| | | ABN AMRO Mortgage Group 2600 W. Big Beaver Rd Troy, MI 48084 | 5,825.00/332 | |
| Acct. no. | $ | Acct. no. 3300008635994 | | |

Freddie Mac Form 65   7/05

Fannie Mae Form 1003   7/05

## VI. ASSETS AND LIABILITIES (cont'd)

| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HomeComings Financial Network | $ Payment/Months 1,636.00/300 | $ 266,250.00 |
|---|---|---|---|---|
| Acct. no | $ | Acct. no. 9511832 | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company Countrywide Home Loans | $ Payment/Months 4,995.00/346 | $ 1,000,000.00 |
| Life insurance net cash value | $ | Acct. no. 971596889 | | |
| Face amount: $ | | Name and address of Company Countrywide Home Loans | $ Payment/Months 2,377.00/180 | $ 260,000.00 |
| Subtotal Liquid Assets | $ 191,396.31 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 5,350,000.00 | | | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 971596933 | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 19,617.00 | |
| Total Assets a. | $ 5,541,396.31 | Net Worth (a minus b) | $ 2,473,704.31 | Total Liabilities b. $ 3,067,692.00 |

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1422 Collier Street (30 units) Austin, TX 78701 | R | 02 | $ 995,000.00 | $ 659,547.00 | $ 15,795.00 | $ 5,825.00 | $ 1,806.00 | $ 4,215.25 |
| 8048 Summer Moon Place Las Vegas, NV 89129 | R | 14 | 430,000.00 | 266,250.00 | 1,350.00 | 1,636.00 | 214.00 | -837.50 |
| 3210 Coldwater Canyon Avenue Los Angeles, CA 91604 | | 14 | 2,525,000.00 | 1,260,000.00 | 0.00 | 7,272.00 | 1,642.51 | |
| | Totals | | $ 5,350,000.00 | $ 3,044,106.00 | $ 19,945.00 | $ 18,958.00 | $ 4,507.84 | $ 407.42 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a. Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
| | | | Yes | No | Yes | No |
| b. Alterations, improvements, repairs | 0.00 | a. Are there any outstanding judgments against you? | ☐ | ☒ | ☐ | ☐ |
| c. Land (if acquired separately) | 0.00 | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 1,260,000.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☐ |
| e. Estimated prepaid items | 8,013.70 | d. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☐ |
| f. Estimated closing costs | 22,023.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☒ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | 0.00 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h. Discount (if Borrower will pay) | 0.00 | | | | | |
| i. Total costs (add items a through h) | 1,290,036.70 | | | | | |

Freddie Mac Form 65   7/05                    Page 3 of                    Fannie Mae Form 1003   7/05

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
| | | | Yes | No | Yes | No |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☒ | ☐ | ☐ |
| k. Borrower's closing costs paid by Seller | 0.00 | | | | | |
| l. Other Credits (explain) Other | 900.00 | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,500,000.00 | i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| | | j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | 0.00 | k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 1,500,000.00 | | | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -210,863.28 | m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 08/14/2006 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: ☐ Female  ☒ Male | Sex: ☐ Female  ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) Rosalie Rains | Name and Address of Interviewer's Employer CAPITAL FINANCIAL ADVISORS, INC. |
|---|---|---|
| | Interviewer's Signature     Date 08/14/2006 | 11111 SANTA MONICA BLVD. SUITE 580 LOS ANGELES, CA 90025 |
| | Interviewer's Phone Number (incl. area code) (310) 444-7191 | |

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:  DANIEL TARVER | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

### Monthly Account Debts

| Name | Address | Account # | Payment/Months | Balance |
|---|---|---|---|---|
| IndyMac Bank | | 6681004421408 | 2,537.00 / 240 | 608,800.00 |
| Washington Mutual | | 10010000000006644,688.00 / 180 | | 249,509.00 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65   7/05

Fannie Mae Form 1003   7/05

| CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **DANIEL TARVER** | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

| Other Liquid Assets | | |
|---|---|---|
| Description | Amount | |
| | 13,386.18 | |



I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **DANIEL TARVER** |
| | Agency Case Number: |
| | Co-Borrower: |
| | Lender Case Number: |

**Schedule of Real Estate Owned**

| Address | Type | Mkt Val | Mortgages | Gross Rental | Mort Paymts | Misc | Net Rental |
|---|---|---|---|---|---|---|---|
| 706 4th Avenue Venice, CA 90291 | 15 | 1,400,000.00 | 858,309.00 | 2,800.00 | 4,225.00 | 645.33 | -2,970.33 |

 

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65   7/05

Fannie Mae Form 1003   7/05

# Uniform Residential Loan Application
### CAPITAL FINANCIAL ADVISORS, INC.

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____   Co-Borrower _____

## I.   TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $ 1,500,000.00 | Interest Rate 6.000 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate  ☐ Other (explain): ☐ GPM  ☒ ARM (type): 5/1 i/o |
|---|---|---|---|

## II.   PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 3210 Coldwater Canyon Avenue, Los Angeles, CA 91604 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1971 |
|---|---|

| Purpose of Loan ☒ Purchase ☒ Refinance ☐ Construction ☐ Construction-Permanent ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2005 | Original Cost $ 1,400,000 | Amount Existing Liens $ 1,260,000 | Purpose of Refinance consol purch 1st & 2nd | Describe Improvements ☒ made ☐ to be made  Complete renovation  Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Daniel Tarver | Manner in which Title will be held Single Man ✓ | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Checking/Saving |
|---|

## III.   BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) DANIEL TARVER | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) (310) 399-0982 | DOB (MM/DD/YYYY) 11/04/1958 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0  ages 1 | ☐ Married  ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 1.3 No. Yrs. 3210 Coldwater Canyon Avenue Los Angeles, CA 91604 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address 3210 Coldwater Canyon Lane Beverly Hills, CA 90210 ✓ | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☒ Own ☐ Rent 0.8 No. Yrs. 705 4th Avenue Venice, CA 90291 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV.   EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer ☒ Self Employed Daniel C. Tarver 3210 Coldwater Canyon Lane Beverly Hills, CA 90210 | Yrs. on this job 17Y Yrs. employed in this line of work/profession 21Y | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business Producer TV Commercials Entertainment & R/E Investor ✓ | Business Phone (incl. area code) (310) 433-5143 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65  7/05                    Page 1 of 4                    Fannie Mae Form 1003 7/05

Borrower's Initials _____                GENESIS 2000, INC. ™ W17.0 ™ (800) 882-0504                Co-Borrower's Initials _____

TARVER

CAPITAL FINANCIAL ADVISORS, INC.

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 26,500.00 | $ | $ 26,500.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 4,895.00 | 7,500.00 |
| Bonuses | | | | Other Financing (P&I) | 2,377.00 | |
| Commissions | | | | Hazard Insurance | 200.00 | 526.04 |
| Dividends/Interest | | | | Real Estate Taxes | 1,442.51 | 1,442.51 |
| Net Rental Income | 407.42 | | 407.42 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 26,907.42 | $ | $ 26,907.42 | Total | $ 8,914.51 | $ 9,468.55 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income  Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | | Monthly Amount |
|---|---|---|---|
| | | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and saving accounts below | | Name and address of Company  (Charge Acct.) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union  **Washington Mutual Bank  1010 VOD P.O. Box 1080  Northridge, CA 91328** | | Citi Cards CBSDNA | | |
| Acct. no. 871-305966-1 | $ 169,631.45 | Acct. no. 5466160120822489 | 245.00 / | 8,928 |
| Name and address of Bank, S&L, or Credit Union  **Washington Mutual Bank  1010 VOD P.O. Box 1080  Northridge, CA 91328** | | Name and address of Company  (Charge Acct.)  MBNA AMERICA | $ Payment/Months | $ |
| Acct. no. 097-439019-9 | $ 8,378.68 | Acct. no. 4264290080010911 | 414.00 / | 14,650 |
| Name and address of Bank, S&L, or Credit Union  **Morgan Stanley DW Inc  601 S. Figueroa St 28th Flr  Los Angeles, CA 90017** | | Name and address of Company  See Schedule of Real Estate | $ Payment/Months  18,958.00 | $  3,044,108 |
| Acct. no. 237-26190-204 | $ 13,386.18 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Stock & Bonds (Company name/number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| | | Acct. no. | | |
| Life insurance net cash value  Face amount $ | $ | Name and address of Company | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ 191,396 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 5,350,000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | 19,617.00 | |
| Total Assets a. | $ 5,541,396 | Net Worth (a minus b) | $ 2,473,704 | Total Liabilities b. | $ 3,067,692 |

Freddie Mac Form 65 7/05
Borrower's Initials _____

Page 2 of 4
GENESIS 2000, INC. * W17.0 * (800) 882-0504

Fannie Mae Form 1003 7/05
C>Borrower's Initials _____

CAPITAL FINANCIAL ADVISORS, INC.

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| See Schedule of Real Estate | Totals | $ 5,350,000 | $ 3,044,106 | $ 19,945.00 | $ 18,958.00 | $ 4,507.84 | $ 407.42 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s).

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 1,280,000.00 |
| e. Estimated prepaid items | 7,397.26 |
| f. Estimated closing costs | 21,992.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 1,289,389.26 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) Paid Charges in GFE | 900.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,500,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 1,500,000.00 |
| p. Cash to Borrower (subtract j, k, l & o from i) | 211,510.74 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | [X] | |
| b. Have you been declared bankrupt within the past 7 years? | [X] | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [X] | |
| d. Are you a party to a lawsuit? | [X] | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | [X] | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | [X] | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | [X] | |
| h. Is any part of the down payment borrowed? | [X] | |
| i. Are you a co-maker or endorser on a note? | [X] | |
| j. Are you a U.S. citizen? | [X] | |
| k. Are you a permanent resident alien? | [X] | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | [X] | |
| m. Have you had an ownership interest in a property in the last three years? | [X] | |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR/IP | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [ ] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino [X] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [X] White | Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White |
| Sex: | [ ] Female [X] Male | Sex: | [ ] Female [ ] Male |

| To be Completed by Interviewer This application was taken by: [X] Face-to-face interview [ ] Mail [ ] Telephone [ ] Internet | Interviewer's Name (print or type) Rosalie Rains | Date 3/14/06 | Name and Address of Interviewer's Employer CAPITAL FINANCIAL ADVISORS, INC. 11111 SANTA MONICA BLVD. SUITE 500 LOS ANGELES, CA 90025 |
|---|---|---|---|
| | Interviewer's Signature | | |
| | Interviewer's Phone Number (incl. area code) (310) 444-7191 FAX:(310) 444-7190 | | |

Freddie Mac Form 65 7/05

Page 3 of 4

GENESIS 2000, INC. • WIT.0 ™ (800) 882-0504

Fannie Mae Form 1003 7/05

## Continuation Sheet/Residential Loan Application

CAPITAL FINANCIAL ADVISORS, INC.

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>DANIEL TARVER | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

WAD1   M2B

 Washington Mutual

   3010265903-868

## ADDENDUM TO LOAN APPLICATION

### NOTICES AND DISCLOSURES

**Important Information About Procedures for Opening a New Account**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Disclosure for Appraisals:** Lender will make arrangements for an appraisal or property valuation to be used internally in the evaluation of your loan application. In doing so, the Lender does not warrant the sales price, value, and/or conditions of the property, nor should you rely on any appraisals or other property valuations arranged for by the Lender in making your decision to purchase and/or borrow against the property.

**Disclosure of Right to Receive a Copy of an Appraisal:** If you are applying for a loan to be secured by a 1 to 4 family dwelling, you have the right to a copy of any appraisal or other property valuation used in connection with your application for credit as long as you have paid sufficient funds to cover the cost of the appraisal.

If you have not received a copy of your report at the time your loan request is closed, denied, or withdrawn, and you would like a copy, please write to us at Washington Mutual, Attn: Home Loan Administration, 3860MBA, 17877 Von Karman, Irvine, CA 92614. In your letter, give us (1) your name, (2) your loan/application number, and (3) your mailing address. We must hear from you no later than 90 days after notification of the action taken, withdrawal of your credit application, or loan funding, as applicable.

**Non-Discriminatory Underwriting Guidelines:** Anyone who inquires about the availability of credit from Lender has the right to receive a copy of our non-discriminatory underwriting guidelines. To obtain a copy of these underwriting guidelines, simply contact the manager at any one of our offices.

**Lender's Attorney:** It is the responsibility of the Lender's Attorney to protect the Lender's interest. Applicant may, at Applicant's expense, engage an attorney of Applicant's choice to represent Applicant's interest in the transaction.

**Ohio Law:** The Ohio Laws against discrimination require that all creditors make credit available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

*Notice to HUD/FHA Applicants: This is notice to the applicants as required by the Right to Financial Privacy Act of 1978 that HUD/FHA has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to HUD/FHA without further notice or authorization but will not be disclosed or released by this institution to another Government Agency or Department without your consent except as required or permitted by law.*

**Indian Tribal Lands:** If the type of land ownership is Indian Tribal Trust, Individual Trust or Allotments, the financial records involving your transaction may be available to the Bureau of Indian affairs and/or the U.S. Department of Interior without further notice or authorization as required to obtain their approval for your loan.

#### CREDIT REPORT AUTHORIZATION

I hereby authorize ☐ Washington Mutual Bank . ☐ Washington Mutual Bank fsb ☒ Washington Mutual Bank, FA (the "Lender"), and any of its agents and assignees, to verify my employment record(s), banking accounts, credit history, and/or any other information which any of them finds necessary in connection with my home loan application. I understand that the use of a photocopy of this form may be necessary to verify one or more of my credit references. I authorize this use and request that a photocopy be honored.

I understand that a credit report will be ordered from a consumer reporting agency prior to loan closing as a part of the application process, and may be ordered in connection with the Lender's review of my account, Quality Control Program, servicing or collection of the loan.

I also authorize the Lender and the Lender's affiliates to obtain a credit report on me, in consideration of any product or service which the Lender or the Lender's affiliates may consider offering me at any time during the application process and while I am a customer.

By signing below, I authorize the Bank to obtain credit reports on me in the manner just described.

_____
Applicant Signature

_____
Co-Applicant Signature

3010265803-868

### CERTIFICATION AND AUTHORIZATION

**Environmental - Applicant's Certification:** By signing below, I do hereby represent and warrant that I am not aware of any substances, materials or products which may be an environmental hazard such as, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks (above or below ground) and contaminated soil or water on the subject property. I acknowledge that the Lender is relying on this representation and warranty as a material part of its loan application process. I also am not aware of any landfill on the property or portion thereof.
Exceptions to the above: _____

I further acknowledge: (1) receipt of applicable disclosures from the seller in purchase transactions; (2) that lead-based paint may exist in housing constructed prior to 1978; (3) that the Lender performs no environmental investigation on my behalf and owes no duty to me to identify lead-based paint or any other environmental condition which might impact the property or its residents; and (4) that it is my sole obligation to investigate for potential impact to the property from environmental conditions.

**Certifications:** I certify by signing below that (1) if an Adjustable Rate Mortgage has been selected, I have received a copy of the Consumer Handbook on Adjustable Rate Mortgages and the appropriate Adjustable Rate Mortgage Loan Disclosure Statement; (2) all of the loan application information provided is true and complete; (3) I understand any intentional or negligent misrepresentation(s) of the information provided in conjunction with our application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I have made on the application; and (4) any significant change from the information provided at time of application until the final Loan Application is signed may have a bearing on the approval of my application for a home loan.

**Insurance Quote(s):**
☐ I understand that Lender's affiliate, Washington Mutual Insurance Services, Inc. would like to contact me with a quote for hazard and, if applicable, flood insurance. Unless this box is checked, I authorize Lender to share information contained in my application with Washington Mutual Insurance Services for this purpose. I authorize Washington Mutual Insurance Services, as an affiliate of the Lender, to obtain a credit report from a third party credit bureau on me for purposes of preparing this quote. Purchasing hazard or flood insurance from Washington Mutual Insurance Services is not a requirement for obtaining the loan.

Are you a California registered domestic partner?
☐ Yes      ☐ No

This question is being posed in light of The California Domestic Partner Rights and Responsibilities Act of 2003, which extends the rights, protections, benefits, responsibilities, obligations and duties of spouses to persons who are members of Registered Domestic Partnerships.

Are you a Connecticut civil union partner?
☐ Yes      ☐ No

This question is being posed in light of an Act concerning Civil Unions in Connecticut, which extends to civil union partners the same benefits, protections and responsibilities under law, as are granted to spouses in a marriage.

You should consult with your own legal advisor for specific legal advice regarding the rights, protections, benefits, responsibilities, obligations and duties of persons who are partners in California Domestic Partnerships or Connecticut Civil Unions.

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

By signing below, each Applicant hereby acknowledges (1) making the above certifications and authorizations and (2) that each Applicant has received and understands the above notices and disclosures.

_____
Applicant Signature

DANIEL TARVER
Printed Name

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                           09/24/2006
Social Security Number                    Date


_____
Co-Applicant Signature


_____
Printed Name


_____
Social Security Number                    Date

Aug-18-06   15:22   From-                                          T-707   P 095/905   F-975

# BORROWER APPLICATION ADDENDUM
## WHOLESALE

Are you a Connecticut civil union partner?

_____ Yes     ✓ No

This question is being posed in light of an Act concerning Civil Unions in Connecticut which extends to civil union partners the same benefits, protections and responsibilities under law, as are granted to spouses in a marriage.

Are you a California registered domestic partner?

_____ Yes     ✓ No

This Addendum has been prepared in response to Assembly Bill 205 of the 2003-04 Regular Legislative Session of California, effective January 1, 2005 that extends the rights and duties of marriage to persons registered as domestic partners on and after January 1, 2005.

You should consult with your own legal advisor for specific legal advice regarding the rights, protections, benefits, responsibilities, obligations and duties of persons who are partners in California Domestic Partnerships or Connecticut Civil Unions.

_____          8/24/06
Signature                          Date

_____          _____
Signature                          Date

| Form **W-9**<br>(Rev. January 2003)<br>Department of the Treasury<br>Internal Revenue Service | LW9F<br>M28 | Request for Taxpayer<br>Identification Number and Certification | 3010265803-868 | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|---|---|

Name (See Specific Instructions on page 2.)

DANIEL TARVER

Business name. If different from above

Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

3210 COLDWATER CANYON AVENUE

Requester's name and address (optional)

City, state, and ZIP code

LOS ANGELES, CA 91604

List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note: If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

253 : 98-8808

or

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign<br>Here | Signature of<br>U.S. person ▶ | *Dal C. a.* | Date ▶ 8/24/06 |
|---|---|---|---|

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note: *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.)

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to

reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

VMP-9030 (0308)   Form **W-9** (Rev.1-2003)

VMP Mortgage Solutions (800)521-7291

Page 1 of 4



Form W-9 (Rev. 1-2003)

Example. Article 20 of the U.S.–China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.–China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W–9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W–8.

What is backup withholding? Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments (29% after December 31, 2003; 28% after December 31, 2005). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W–9.

## Penalties

Failure to furnish TIN. If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $60 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

Civil penalty for false information with respect to withholding. If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

Criminal penalty for falsifying information. Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs. If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

⦿–9030 (0305)

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

Sole proprietor. Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as" (DBA) name on the "Business name" line.

Limited liability company (LLC). If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701–3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

Other entities. Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

Note: *You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).*

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

Note: *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

Exempt payees. Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2);

2. The United States or any of its agencies or instrumentalities;

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities;

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities; or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation;

7. A foreign central bank of issue;

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States;

Page 2 of 4

Initial: _____

Form W-9 (Rev. 1-2003)

9. A futures commission merchant registered with the Commodity Futures Trading Commission;

10. A real estate investment trust;

11. An entity registered at all times during the tax year under the Investment Company Act of 1940;

12. A common trust fund operated by a bank under section 584(a);

13. A financial institution;

14. A middleman known in the investment community as a nominee or custodian; or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| If the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

Note: See the chart on page 4 for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at www.ssa.gov/online/ss5.html. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

Form W-9 (Rev. 1-2003)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt from backup withholding on page 2.

Signature requirements. Complete the certification as indicated in 1 through 5 below.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |
| **For this type of account:** | **Give name and EIN of:** |
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid to you, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

# EXHIBIT H



This page is part of your document - DO NOT DISCARD



**06 1934000**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**08/30/06 AT 08:00am**

**TITLE(S) :** _____





L E A D    S H E E T

**FEE**

FEE $ 70-VV
DAF $ 2 -
C-20

22

**D.T.T.**

NOTIFICATION SENT-$4 ⊚

**CODE**
**20**

**CODE**
**19**

**CODE**
**9** ____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**



UNITED TITLE COMPANY
WESTLAKE VILLAGE BRANCH

Recording Requested By:
WASHINGTON MUTUAL BANK   FA

Return To:
WASHINGTON MUTUAL BANK   FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

06  1934000

Prepared By:
SUSAN CROCFER

₩604438.77

——————————— [Space Above This Line For Recording Data] ———————————

ZCA1
M28

# DEED OF TRUST

3010265803-868

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 24, 2006 , together with all Riders to this document.

(B) "Borrower" is DANIEL TARVER, A SINGLE MAN

Borrower's address is   3210 COLDWATER CANYON AVENUE, LOS ANGELES, CA 91604 . Borrower is the trustor under this Security Instrument.

(C) "Lender" is WASHINGTON MUTUAL BANK, FA

Lender is a FEDERAL SAVINGS BANK
organized and existing under the laws of THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01

VMP®–6(CA) (0207)
Page 1 of 15     Initials: ___
VMP MORTGAGE FORMS · (800)521-7291



*3*

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated AUGUST 24, 2006
The Note states that Borrower owes Lender ONE MILLION FIVE HUNDRED THOUSAND AND 00/100                                                                                    Dollars
(U.S. $   1,500,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 01, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

08/12/08

Initials: ___

06 1934000

4

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                      of  LOS ANGELES                               :

           [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]   *A* ,
     THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT *A*
     AND IS MADE A PART HEREOF.

Parcel ID Number:   2385-021-008                          which currently has the address of
3210 COLDWATER CANYON AVENUE                                                        [Street]
LOS ANGELES                                        [City],  California  91604   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

VMP®-6(CA) (0207)                       Page 3 of 15          Initials: _____          Form 3005 1/01

06 1934000

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

Initials: _____

-6(CA) (0207)          Page 4 of 15          Form 3005 1/01

06  1934000

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

@ -6(CA) (0207)                          Page 5 of 15        Initials: DCD                     Form 3005 1/01

7

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Initials: _____

06 1934000

8

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

−6(CA) (0207)

Page 7 of 15

Initials: _DC_

Form 3005 1/01

06 1934000

9

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: _____

—6(CA) (0207)                     Page 9 of 15                     Form 3005 1/01

06 1934000

*10*

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

Initials: *DC1*

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

Initials: _DCS_

06 1934000

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

Initials: _DCD_

®–6(CA) (0207)                    Page 11 of 15                    Form 3005 1/01

06 1934000

13

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

@D -6(CA) (0207)                          Page 12 of 15          Initials: DcⱭ          Form 3005 1/01

06  1934000

14

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Initials: _____

06 1934000

ZCA2

15

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                                  -Borrower
                                      DANIEL TARVER

_____     _____ (Seal)
                                                                  -Borrower

_____ (Seal)   _____ (Seal)
                   -Borrower                                     -Borrower

_____ (Seal)   _____ (Seal)
                   -Borrower                                     -Borrower

_____ (Seal)   _____ (Seal)
                   -Borrower                                     -Borrower

06 1934000

/6

State of California
County of LOS ANGELES

} ss.

On AUGUST 24, 2006

before me, ALFONSO LIRA Notary Public

DANIEL TARVER

personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)



ALFONSO LIRA
Commission # 1632082
Notary Public - California
Los Angeles County
My Comm. Expires Dec 20, 2009

06 1934000

LGLD

LEGAL DESCRIPTION

3010265803-888

*17*

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE
EXHIBIT AND IS MADE A PART HEREOF.

06  1934000

ORDER NO  80604438-77

*18*

## EXHIBIT "A"

THAT PORTION OF LOT 1111 OF TRACT NO. 1000, IN THE CITY OF
LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS
PER MAP RECORDED IN BOOK 19 PAGE (S) 1 TO 34 INCLUSIVE OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY,
DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WESTERLY LINE OF THE CERTAIN
EASEMENT DESCRIBED IN DEED TO THE CITY OF LOS ANGELES,
RECORDING IN BOOK 12315 PAGES 35 OFFICIAL RECORDS OF SAID
COUNTY, (DISTANT THEREON SOUTH 08° 15' EAST 8.41 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE RECITED IN
SAID DEED AS HAVING A BEARING OF SOUTH 08° 15' EAST AND A
LENGTH OF 157.60 FEET, THENCE NORTH 61° 31' 53" WEST 200
FEET TO THE TRUE POINT OF BEGINNING;

THENCE CONTINUING NORTH 61° 31' 53" WEST 92.81 FEET, THENCE
SOUTH 74° 45' 42" WEST 15 FEET TO A POINT IN THE EASTERLY
LINE OF THAT PORTION OF SAID LOT, DESCRIBED IN DEED TO
WARREN FL LEONARD AND RHEA M LEONARD, RECORDED IN BOOK 14225
PAGE 274 OFFICIAL RECORDS OF SAID COUNTY, DISTANT THEREON
NORTH 15° 14' 18" WEST 53.12 FEET, FROM THE SOUTHERLY
TERMINUS OF THAT CERTAIN COURSE RECITED IN SAID DEED AS
HAVING A BEARING OF SOUTH 15° 52' 54" EAST AND A LENGTH OF
97.61 FEET; THENCE ALONG SAID EASTERLY LINE THE FOLLOWING
COURSES

NORTH 15° 14' 18" WEST 44.49 FEET, THENCE NORTHWESTERLY
57.61 FEET (THROUGH AN ARC OF 22° 15' 45") ALONG A TANGENT
CURVE CONCAVE TO THE SOUTHWEST HAVING A RADIUS OF 148.27
FEET, THENCE NORTHWESTERLY 46.19 FEET (THROUGH AN ARC OF 32°
18' 05") ALONG A REVERSE CURSE CONCAVE TO THE NORTHEAST
HAVING A RADIUS OF 81.93 FEET TO THE MOST NORTHERLY CORNER
OF THE LAND DESCRIBED IN SAID DEED), THENCE NORTH 84° 48'
02" EAST 15 FEET;

THENCE NORTH 71° 48' 37" EAST 195.84 FEET TO A POINT IN THE
WESTERLY LINE OF COLDWATER CANYON ROAD, AS SHOWN ON MAP OF
TRACT NO. 5655 RECORDED IN BOOK 110 PAGES 69 TO 71 INCLUSIVE
OF SAID MAP RECORDS, DISTANT THEREON NORTH 06° 43' 58" WEST
52.85 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE
IN SAID WESTERLY LINE, HAVING A RADIUS OF 120 FEET, AN ANGLE
OF 350 55' AND A LENGTH OF 75.22 FEET, THENCE ALONG SAID
WESTERLY LINE SOUTH 06° 43' 58" EAST 25 FEET; THENCE SOUTH
14° 09' 11" WEST 221.42 FEET TO THE TRUE POINT OF BEGINNING.

06 1934000

ORDER NO  80604438-77

*19*

EXCEPT  THEREFROM  ALL  OIL,  GAS,  MINERALS  AND  OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT  WITHOUT  THE  RIGHT  OF  SURFACE  ENTRY,  AS  RESERVED  OR GRANTED IN DOCUMENTS OF RECORD.

06 1934000

R2US
M28

3010265803-868

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this            24TH       day of
AUGUST, 2006          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of
the same date given by the undersigned ("Borrower") to secure Borrower's
Fixed/Adjustable Rate Note (the "Note") to
WASHINGTON MUTUAL BANK, FA

("Lender") of the same date and covering the property described in the Security
Instrument and located at
   3210 COLDWATER CANYON AVENUE
   LOS ANGELES, CA 91604
     (Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE
AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of      6.125      %. The
Note also provides for a change in the initial fixed rate to an adjustable interest rate, as
follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
 (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on
the first day of SEPTEMBER 01, 2011          , and the adjustable interest rate I will
pay may change on that day every 12th month thereafter. The date on which my initial
fixed interest rate changes to an adjustable interest rate, and each date on which my
adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family -**
**Fannie Mae Uniform Instrument**     Form 3187 6/01
VMP®-168R (0401)
Page 1 of 4  Initials:
VMP Mortgage Solutions
(800)521-7291



06  1934000

*U*

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO                                    percentage points (     2.000     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  11.125         % or less than      2.000                       %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   11.125      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Initials: _____

⑫₎-168R (0401)          **Page 2 of 4**          Form 3187 6/01

06 1934000

*77*

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

-168R (0401)                    Page 3 of 4                    Form 3187 6/01

Initials: _DM_

06 1934000

*73*

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

DANIEL TARVER

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

_____ (Seal)
                       −Borrower

-168R (0401)              Page 4 of 4              Form 3187 6/01

06  1934000

## PROOF OF SERVICE

<u>Tarver v. JPMorgan Chase Bank, N.A. etc., et al.</u>
<u>United States District Court – Central District of California Case No. CV11-08775-JHN (FMOx)</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 6100 Center Drive, Suite 1050, Los Angeles, California 90045. On January 9, 2012, I served the following document(s) by the method indicated below:

## FIRST AMENDED COMPLAINT

[ ]   BY CM/ECF ELECTRONIC DELIVERY: In accordance with the registered case participants and in accordance with the procedures set forth at the United States District Court, Central District of California website www.ecf.cacd.uscourts.gov.

[ ]   by transmitting via facsimile on this date from fax number (626) 968-9502 the documents listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

[X]   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date on postage meter date is more than one day after the date of deposit in this Declaration.

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on January 9, 2012, at Los Angeles, California.

Shawnee Ellington

1

### Service List
Tarver v. JPMorgan Chase Bank, N.A. etc., et al.
United States District Court – Central District of California Case No. CV11-08775-JHN (FMOx)

Authorized Agent for Defendant JPMorgan Chase Bank, N.A. Successor in Interest to Washington Mutual Bank F.A, Bank of America, N.A. as Successor by Merger to LaSalle Bank, N.A. As Trustee for Wamu Mortgage Pass Through Certificates Series 2006-AR12 Trust.
Mark L. Block, Esq.
Jeffrey N. Williams, Esq.
Wargo and French LLP
515 S. Flower Street, 36th Floor
Los Angeles, CA 90071

2